SARAH J. WESTERVELT and PETER D. WESTERVELT v. ST. LOUIS TRANSIT COMPANY and UNITED RAILWAYS COMPANY, Appellants.

Division One, July 12, 1909.

1. **NEGLIGENCE: Railway Companies: Lessor and Lessee.** The agreement between the United Railways Company and the St. Louis Transit Company, concerning the street railroads, was a lease, and the lessor is not liable for the negligence of the lessee in operating cars.

2. **EXCESSIVE VERDICT: $6,000.** By the sudden start of the car, as plaintiff attempted to alight, she was given a violent twist, wrenching her back. The wrench affected the vertebral column in the small of her back, and left hip. She was fifty years old, and her health was broken by the wrench. She

long suffered from convulsions and pain of body and mind. She became and continued an invalid, and was put under the care of physicians and nurses. The muscles of the left side are weakened and diminished in size, producing an apparent curvature of the spine. Her left hip is atrophied. Her left leg is smaller and shorter than the other. She walks with a limp and carries a cane. Her sleep is broken, her spirits are broken, and she is afflicted with nervous disorders. There is no testimony that she was simulating. Her physicians attribute her ills to the wrench, and say they are permanent. Defendant's experts stoutly testify that her ills are not attributable to the wrench, but to hallucinations resulting in mere hysteria, accentuated by worry and solicitude over her litigation. *Held*, that the jury could reasonably have believed her witnesses, and a verdict of $6,000 will not be held to be excessive.

3. **NEGLIGENCE: Alighting from Street Car: Reasonable Time.** Where there was no evidence that plaintiff was given reasonable time in which to alight from the street car, there was no substantial error in the failure of plaintiff's instructions to require the jury to find that she had not been given reasonable time in which to alight. Especially, where defendant's instructions required the jury to find "that before she had reasonable opportunity to leave said car, it was suddenly started."

4. ———: ———: **Conductor's Knowledge.** Where the car was stopped for the specific purpose of letting plaintiff off and the conductor stood at the exit, it is not necessary that her instructions require the jury to find that the operatives of the car actually knew she was alighting. Under the circumstances the conductor was bound to know she was in the act of alighting, and the court could assume as a matter of law that he did know.

5. ———: **Double Damages.** An instruction permitting the jury to assess damages "for any pain of body or mind," and "for any injury to her nervous system" and "for any permanent lameness or crippled physical condition" does not allow double damages for the same pain of body or mind and the same injury.

6. ———: **Independent Cause.** Where defendant asked the court to instruct the jury that "if plaintiff in attempting to leave the car staggered or was turned, and injured, as the result of a depression in the ground where she attempted to alight," the court did not err in adding the words, "and without any such want of care on the part of the operatives of the car, as defined in other instructions." If other things or conditions contributed to the injury that does not relieve defendant.

Appeal from St. Louis City Circuit Court.—*Hon. C. Orrick Bishop,* Judge.

AFFIRMED AS TO ST. LOUIS TRANSIT COMPANY, APPELLANT; REVERSED AS TO UNITED RAILWAYS COMPANY, APPELLANT.

*Boyle & Priest* and *T. E. Francis* for appellants.

(1)   Plaintiff's instruction 1, which directed the jury to return a verdict for plaintiff, if they believed the car was started with a sudden movement while plaintiff was alighting therefrom, is erroneous:   (a) Because it did not require the jury to further find that the car was not stopped a sufficient length of time to permit plaintiff to alight.   Clotworthy v. Railroad, 80 Mo. 220; Jackson v. Railroad, 118 Mo. 224.   (b)   Because there was no evidence that the car started with a "sudden movement."   Hines v. Marshall, 22 Mo. App. 214; Evans v. Railroad, 106 Mo. 594; McQuillan's Mo. Instrs. sec. 95.   (2)   Plaintiff's instruction 4, which defines the measure of damages, is erroneous, because it did not limit the recovery for pain of mind to such as may have been caused by bodily injuries. Trigg v. Railroad, 74 Mo. 147; Connell v. Railroad, 116 Mo. 34; Deming v. Railroad, 80 Mo. App. 152; Snyder v. Railroad, 85 Mo. App. 495.   (3)   Plaintiff's instruction 5 is erroneous, because it allowed the jury to award damages for "mental suffering," separate and apart and distinct from pain of body.   Johnson v. Wells-Fargo & Co., 6 Nev. 224; Joch v. Dankwordt, 85 Ill. 331; City of Salina v. Trosper, 27 Kan. 564.   (4) The court erred in refusing to give, as requested, defendant's instruction 4 and in modifying said instruction and in giving the same as modified of its own motion, in that, as amended, it permitted a recovery by plaintiff on a theory of negligence not counted on in the petition.   Yall v. Gillham, 187 Mo. 393; Hesselbach v. St. Louis, 179 Mo. 505; Beave v. Railroad, 212 Mo. 331.

(5)   The verdict is excessive.   Nelson v. Railroad, 113 Mo. App. 663; Morris v. Railroad, 144 Mo. 508.

*Richard F. Ralph, Thomas T. Fauntleroy* and *Shepard Barclay* for respondents.

(1)   The first assignment of error is groundless because the ''sudden movement'' of the car and the giving of ''reasonable opportunity to alight'' were facts both called for by instructions asked and given for defendants.   A party is bound by his own instructions as by other theories of law on which he asks the trial court to act.   Tomlinson v. Ellison, 104 Mo. 105; Minton v. Steele, 125 Mo. 181; Deschner v. Railroad, 200 Mo. 333; Nephler v. Woodward, 200 Mo. 189; Rogers v. Railroad, 117 Mo. App. 686.   (2)   The 4th instruction required the jury to find that plaintiff had been physically injured, as described in the 1st instruction, before any damages were to be awarded to her; and when physical injury directly causes pain, etc., the law accords compensation.   This is law familiar enough to be trite.   As to the physical injury caused by the wrench of plaintiff's body, the black and blue spot, indicating the seat of the injury, there was no conflict of evidence. Pain (physical and mental) is a proper subject for compensation on the facts here proven, as declared in the 4th instruction for plaintiffs.   Haxton v. K. C., 190 Mo. 64; Covell v. Railroad, 82 Mo. App. 187; Eberly v. Railroad, 96 Mo. App. 361.   (3)   The injury to the spine and nervous system (neurasthenia) produced by the concussion of the physical injury, is a proper subject for compensation in  damages, as declared in the 4th instruction for plaintiffs.   Brown v. Railroad, 99 Mo. 310; Stevens v. Railroad, 105 S. W. 26; Railroad v. Ellerhorst, 110 S. W. 823; Lindsay v. Railroad, 195 Mo. 180.   Compensation for mental and physical pain, damage to the nervous system (neurasthenia) and lameness all caused by a physical injury, does not in-

volve any double recovery. Railroad v. Middleton, 103 S. W. 203; Stewart v. Watson, 112 S. W. 762. (4) The shortening of the leg and ensuing lameness are proper elements of damage. Fleddermann v. Railroad, 113 S. W. 1143. (5) The 5th instruction for plaintiffs explained what was included in "pain and suffering" (as mentioned in the 4th instruction) and was obviously correct. Railroad v. Barnes, 111 S. W. 447; Railroad v. Middleton, 103 S. W. 203; Saeger v. Railroad, 110 S. W. 686; Railroad v. Ellerhorst, 110 S. W. 823. (6) The damages were reasonable, and, after four trials, extremely moderate, in view of the facts in evidence. Smith v. Whittier, 95 Cal. 279; Sears v. Railroad, 6 Wash. 227; Tuthill v. Railroad, 30 N. Y. Supp. 959; Crozier v. Railroad, 118 N. W. 256; Berry v. Railroad, 114 S. W. 27; Chicago v. Didier, 131 Ill. App. 406. (7) The refusal of defendant's 4th instruction as asked, and the giving thereof as modified, was correct. The reference therein to the "other instructions herein" precludes the possibility of any error of interpretation by the jury such as defendant's learned counsel suggests. That modification could not possibly bring into view any other negligence (or phrase thereof) than that alleged, proved, and submitted by the "other instructions herein" on that subject, to which "other instructions" no objections are now urged.

LAMM, P. J.—Plaintiffs, Sarah J. and Peter D., are husband and wife—defendants common carriers of passengers for hire in St. Louis as street railway corporations. On December 19, 1899, after dark, Sarah rode as a pay passenger on a south-bound car on Virginia avenue. Claiming injuries through negligence of defendants while she was alighting from her car at the intersection of Virginia with Bowen street, she (uniting her husband) sued both companies counting on negligence and laying her damages at $30,000. Her petition states that "defendants" operated a line of

cars running on Virginia avenue; that she was a passenger on "one of defendants' cars;" that "defendants agreed" to use care to carry her safely and to allow her to alight in safety at her destination. It is then alleged as follows:

"Plaintiffs further state that whilst the said Sarah was in the act of alighting from defendant's said car, at or near the intersection of Virginia avenue aforesaid and Bowen streets in said city, where said car had stopped to permit said Sarah to alight, said defendants carelessly and negligently caused the said car to start forward with a sudden movement so that the said Sarah, while in the act of alighting from said car, was turned and jerked about and wrenched so as to produce the injuries to her to be mentioned presently. The direct effects of said negligence of defendants were," etc. (Here a grevious list of resulting ills and hurts are charged.)

Defendants answered separately by general denial.

The trial was to a jury. A verdict came in for $6,000. Unsuccessful motions for a new trial and in arrest were filed and from a judgment rendered against both, they appeal. Sufficient of the facts will appear in connection with points ruled.

At the close of plaintiff's evidence in chief, defendants interposed separate demurrers which were overruled and exceptions saved. At the close of the whole case, defendants renewed their separate demurrers and saved exceptions to the second disallowance of them.

Contentions made by the United Railways Company are distinct from those of the Transit Company and separate briefs are filed by both sides in that regard. It will be convenient to preserve that line of cleavage in this opinion.

On behalf of the United Railways Company error is assigned in refusing to direct a verdict and in giving an instruction (No. 6) on behalf of plaintiff to the

effect that under the lease, ordinance and other documentary evidence those operating the car in question "are to be considered as agents of both the defendant companies."

On behalf of the Transit Company errors are assigned in giving instructions numbered 1, 4 and 5. Further, it is insisted that the verdict is excessive.

### I.  Of the United Railways' appeal.

There was testimony showing that the Transit Company was in fact running the car on which Mrs. Westervelt was a passenger.  There is no proof that the United Railways Company had lot, part or parcel in running it unless a certain agreement (introduced by plaintiffs) between that company and the Transit Company, when judicially construed and interpreted, had the effect of making them joint operators of the car at that immediate time.  But we have ruled on full argument and deliberation that the argeement could not be given that legal effect.  [Moorshead v. Railroad, 203 Mo. 121; Chlanda v. Railroad, 213 Mo. 244.]

In neither of those cases were there allegations resting on equitable doctrines or relating to fraud in the concoction or purpose of the lease, and none such are here.  In those cases we construed the agreement, whereby the Transit Company took possession of the tracks, cars, plant and former business of the United Railways Company, as a *lease* constituting the Transit Company the lessee and the United Railways Company the lessor; and we ruled that the relation of lessor and lessee relieved the lessor from liability for the negligence of the servants and employees of the lessee.

In the Chlanda case it was ruled that when plaintiff introduced the lease she vouched for the document as a live, valid, operative lease, if the court put that interpretation on the paper, and could not be heard to discredit it as a lease by contending (without proof

one way or the other) that antecedent steps provided by law had not been affirmatively shown to have been taken. It was pointed out that if defendant had introduced the lease and plaintiff, absent proof of compliance with conditions precedent, had objected to its introduction, a different question might arise.

Learned counsel for plaintiffs in the case at bar did not have the benefit of our holding in the Moorshead and Chlanda cases at the time of the trial in this case. They do not now argue that the doctrines promulgated in those cases are unsound; but seek to differentiate and distinguish the case at bar by insisting that certain documentary evidence introduced by them, to-wit, a certificate of the incorporation of the Central Traction Company of St. Louis in 1898, a certificate of the change of name of "Central Traction Company" to "United Railways Company of St. Louis" in 1899, and a certificate of the incorporation of the St. Louis Transit Company in 1899, throws new and controlling light upon the legal propositions. They also insist that certain ordinances put in evidence by defendant, leading up to the lease, show that acceptance of and assent to the provisions of the ordinances were essential conditions precedent to the validity of the lease as a lease. But each and every of these positions was held in judgment in either the Moorshead or the Chlanda case, directly or by necessary inference. Here the assents and acceptances are created by ordinances. There they were created by the Constitution or statutes. Here, as well as there, there is no pretence that actual assent was not given and actual acceptance was not made. Here respondent argues, as there respondents argued, that it devolved upon appellant to show affirmatively that such conditions were complied with. We disallowed this argument because of the fact that plaintiff introduced the lease to establish the working arrangement between the Transit Company and the United Railways Company and upon which working

agreement she predicated her right of recovery. If we had held that the agreement did not constitute a lease, but showed a present joint arrangement to run and operate the street railways as partners, or under some relation of principal and agent, then the liability of the United Railways would natur-ally flow from such construction; but this court took the other view of it and ruled that the relation of lessor and lessee was created. From that ruling the conclusion follows that the lessor was no more liable for the torts of the lessee than any other landlord would be for the torts of his tenant in the use of leased property.

We have been unable to bring ourselves to the be-lief that it would subserve any good purpose to re-state, re-examine or redetermine the propositions dis-cussed and doctrines announced in those cases. Let settled points be undisturbed, as the maxim saith.

Accordingly, we rule it was error to refuse to direct a verdict in favor of the United Railways Company.

But this ruling, in and of itself, does not require the reversal of the judgment as to the Transit Com-pany. [Stotler v. Railroad, 200 Mo. l. c. 149, et seq.] Therefore, assignments of error singular to that de-fendant must be determined.

II. Of the appeal of the Transit Company.

(a) It is argued the verdict is excessive. We think otherwise. Plaintiffs' testimony was delivered by unimpeached lay witnesses, neighbors and ac-quaintances, by physicians of learning and skillful ex-perience attending her professionally and who tes-tified from actual observations and as experts, and by physicians who examined her from time to time and who gave to the jury the results of their examina-tion with their professional opinion. On defendant's part the bulk of the testimony was from experts who had examined her, supplemented by that of some lay

witnesses who knew her or had observed her movements. At the last trial, the case had been pending several years. It was tried four times and the experience and observations of alert counsel on both sides were rounded out and enlightened by the incidents of this long, running legal fight. Appellant, Transit Company, does not pointedly contend there was no case for the jury on the facts. Neither does it contend that Mrs. Westervelt is simulating. Absent such contentions, we need not give or analyze the testimony in detail. On her part it tended to show that at the time of her injury she was about fifty years of age; that while she had been ailing at spells, after the way of women, and had once been frightened by a runaway accident some years before, and while a year or more before December 19, 1899, she had been in a hospital for some minor operation on her womb, yet that up to the time she was hurt on said date her nerves had been reasonably well strung and steady, her general health reasonably good, her ability to well do her duties as a housewife unquestioned. She enjoyed society, attended church, worked her flower garden, raised a family and managed her household affairs—reasonably free from aches and pains and blessed with good spirits and sprightliness. There was some testimony on behalf of appellant that the picture drawn by her witnesses as to the soundness of her health before her hurts was false, or too rosy, or in too free outline. They testified she seemed full of ailments and often gave voice to misery from bad health. But we will not meddle with that conflict in testimony. The genius of our law has wisely and quite relieved an appellate court from that burden, at least. We neither hunger nor thirst after, nor assume, power to disturb the finding of twelve men in the box sanctioned by one on the bench on a question of fact on which the testimony ran pro and con. Theirs

(not ours) the duty was to sift and winnow out the true from the false, to believe or disbelieve.

There is substantial evidence that on the evening of December 19, 1899, she was riding on one of defendant's cars. The platform and way out of this car were narrow and old-fashioned. She rang the bell to signal a stop at the intersection of Virginia and Bowen. In obedience to that signal the car, running by the usual stopping place for eight or ten feet, stopped to let her off. The conductor was standing on the rear platform nearby the exit. She went there to alight. The step down was made longer than usual by a small depression or slope in the ground and was a long step. As she was alighting a woman undertook to enter. A bit of confusion arose from her offer to get up and in as Mrs. Westervelt offered to get down and out. As one of her feet was on the last step and she was about to put her other on the ground, the car signal was given and the car suddenly started giving her a violent twist, as she instinctively sought to recover herself, wrenching her back. She was saved from falling prone by the woman, an acquaintance. The evidence tends to show that the wrench or strain affected her vertebral column in the small of her back, and left hip. It tended to show that her health was broken by that wrench; that from a woman in fair health she became and continued a miserable one, long suffering from convulsions and pain of body and distress of mind. She became and continued an invalid and unable to perform her household duties and was put in the care of nurses and physicians. The muscles on the left side of her back below the belt line are weakened and diminished in size, producing an apparent curvature of the spine. Her left hip is atrophied. Her left leg is smaller and shorter than the other. She walks with a limp and carries a cane. Her sleep is broken, her spirits are broken and she is afflicted with nervous disorders of a seri-

ous character, described in medical terminology in words of length and sound. All this train of attendant ills, permanent if her physicians are believed, was attributed by them to the wrench, shock and sprain she received by the sudden movement of the car. There appeared physical discoloration on her back the next day after the injury and a black-and-blue spot upon her hip. The learned and wise men, defendant's experts, stoutly testified that her trouble could not be attributed to a sprain or wrench of the back and that she was the victim of psychological phenomena having no visible or physical basis, in the nature of hallucinations, etc., resulting in mere hysteria accentuated by worry and solicitude over her litigation.

The jury had the help of most scholarly disquisitions on subtle phases of nervous disorders, peculiar to women, whether resulting from fright, or shock in a nerve center, through some injury or the "change in life." They saw, listened, heard, weighed—and then decided to believe the testimony of plaintiff and her witnesses. Why not? They had their choice, under the law, and took it.

There is no such large verdict as would invoke anxious judicial solicitude, or cause judicial fear that the jury were hurried beyond justice and reason into an unseemly verdict through passion, prejudice or overwrought sympathy for a suffering woman.

The point is ruled against defendant.

(b) Defendant excepted to the giving of all plaintiff's instructions. That complaint is confined here to the giving of three of them, viz.:

"(1) The court instructs the jury that if they believe from the evidence that plaintiffs were husband and wife at the time of Mrs. Westervelt's alleged injury, and that plaintiffs are now husband and wife, and that on December 19, 1899, Mrs. Westervelt, one of said plaintiffs, was being carried as a passenger on a street car, and that said car was then and there

being operated by the St. Louis Transit Company on
Virginia avenue in the city of St. Louis, Missouri, for
the transportation of passengers, and that she had
paid to the conductor of said car her fare as a pas-
senger; and that thereafter, on said date, December
19, 1899, said car stopped to permit said Mrs. Wester-
velt to alight, at or near the intersection of Virginia
avenue and Bowen street; and that while plaintiff,
Mrs. Westervelt, was attempting to alight, and was
in the act of alighting from said car, then and there,
the agents and servants managing and controlling the
movements of said car at the time caused the said
car to start forward with a sudden movement, and
that the said plaintiff was thereby turned, jerked about
and wrenched, and that as a direct consequence ·of
said starting of said car, said plaintiff sustained any
of the injuries mentioned in the instructions numbered
4 and 5 (touching plaintiff's damages) and that dur-
ing all of said events, plaintiff was exercising ordi-
nary care on her part, in the circumstances; and if
you further find from the evidence that in so starting
said car, the agents and operatives in charge of said
car neglected and failed to observe the degree of care
defined in the second instruction as the care devolving
upon a carrier of passengers, and that as a direct con-
sequence of said failure or omission to exercise such
care, said plaintiff, Mrs. Westervelt, was injured, then
your verdict should be for the plaintiffs.

"(4)  The court instructs the jury that if, under
the evidence and the law as declared in the other
instructions of the court, you decide to find a verdict
in favor of plaintiffs, you should assess the damages
in your verdict at such a sum as you believe from the
evidence to be a reasonable compensation for any one
or more of the following items of damage, if any,
which you find and believe from the evidence Mrs.
Westervelt had already sustained (or is reasonably

certain to sustain in the future) as a direct result of the acts of defendant complained of in this action, namely:

"1. For any pain of body or mind;

"2. For any injury to her nervous system;

"3. For any permanent lameness or crippled physical condition if you find from the evidence that any such injury directly resulted to her.

"But the total award of damages in your verdict is limited to the amount claimed in the petition, namely, to $30,000.

"(5) The court further instructs the jury that if, under the evidence and the law as declared in the other instructions of the court, you decide to find a verdict in favor of plaintiffs, and if you further find from the evidence that Mrs. Westervelt sustained an injury to her nervous system as a direct consequence of the facts recited in the first instruction of the court (if you find from the evidence the facts to be as therein recited) and that there has been thereby directly caused to Mrs. Westervelt a hysterical condition which produces sensations and impressions of pain and suffering to her, then she is entitled to recover, as part of the damages for her pain of mind, reasonable compensation for the kind of pain and suffering last above described (if any) which you may find she has already endured as a direct result of said injury, as well as for such pain and suffering of that nature, if any, as you may find from the evidence she is reasonably certain to endure hereafter."

One of defendant's instructions was modified and one was refused. Complaint was made of this modification and refusal, but it is abandoned.

The court gave for defendant the following instructions, pertinent to criticisms now made by it against plaintiff's instructions hereinbefore set forth, viz.:

"2. If from all the evidence in the case the jury are unable to determine whether the injury of which plaintiff complains is due to the negligence of the servants of the defendant St. Louis Transit Company in suddenly starting its car while plaintiff was in the act of alighting therefrom or from some other cause, then plaintiff cannot recover and your verdict will be for defendant.

"3. The jury are instructed that you cannot infer negligence against the defendant in this case from the mere fact, if you find it from the evidence to be a fact, that plaintiff was injured while attempting to alight from defendant's car. The burden is upon the plaintiff to prove to the jury by the greater weight of all the credible evidence in the case that the car on which she was riding came to a stop in order to discharge her, and that while she was in the act of alighting, but before she had reasonable opportunity to leave said car, it was suddenly started with a jerk thereby turning plaintiff around and causing her bodily injury.

"4. If the jury believe from the evidence that the car had passed the usual station or stopping place for the discharge of passengers and stopped at a place where there was a depression in the ground, and that by reason of such depression it was a long step from the platform or step of the car to the ground; and that plaintiff in attempting to leave said car at said point staggered, or was turned, and injured as the result of the condition of the ground where she attempted to alight [and without any such want of care on the part of the operative of the car (as defined in other instructions herein)] then the plaintiff cannot recover in this action, and your verdict will be for the defendants."

NOTE: The part in brackets was inserted by the court and is the modification complained of and which complaint is abandoned, as stated.

"5.  The jury are instructed that before plaintiff is entitled to recover in this case, she must have proved to the satisfaction of the jury and by the greater weight of the evidence:

"First.  That she was a passenger on one of defendant's cars; that the car stopped in obedience to her signal to permit her to alight, and that while in the act of alighting and before she had reasonable opportunity to fully alight, the car was suddenly started with a jerk, thereby precipitating plaintiff onto the ground, and

"Second.  That the injuries for which she seeks to recover damages are the direct result of her being so thrown or precipitated from said car.

"And if plaintiff has failed to make such proof to the reasonable satisfaction of the jury, then she cannot recover in this action and your verdict will be for defendant.

"6.  If the jury find and believe from the evidence that plaintiff's alleged injuries were not due to any negligence on the part of defendant but were the result of a mere accident or misadventure, then plaintiff cannot recover and your verdict must be for defendant.

"7.  The jury are instructed that you are the sole judges of the credibility of the witnesses and of the weight and value to be given to their testimony, and in determining such credibility, weight and value, you will take into consideration the witness's manner on the stand, his or her interest, if any, in the result of the trial, the probability or improbability of his or her statements, and if from all the facts and circumstances detailed in evidence you believe that any witness has willfully, that is, intentionally sworn falsely to any material fact in issue, then you are at liberty to disregard the whole or any part of such witness's testimony."

Westervelt v. Transit Co.

(w)   Counsel argue that plaintiff's instruction numbered one was erroneous in that it did not require the jury to find that plaintiff had not been given reasonable time in which to alight.  But that is an invalid criticism because there was no evidence tending to show the time was reasonable, nor did any witnesses testify as to the time of the stop.  The transaction was simple, single, prompt and under the eye of the conductor, or at least in his presence.  The car was stopped to permit her to alight and started when she was in the act of alighting.  The operatives of the car did not testify and the facts in that regard are undisputed.  Reasonable time under such circumstances was time enough to alight and nothing less would do.  That time, under the undisputed proof, she did not have.

Furthermore, the general language of the instruction was sufficient in the first instance.  It states: "and if you further find from the evidence that in so starting said car, the agents and operatives in charge of said car neglected and failed to observe the degree of care defined in the second instruction as the care devolving upon a carrier of passengers," etc. The second instruction is not complained of as an improper definition of a carrier's care.  In this condition of things, if defendant wanted more explicit instructions it should have asked them.  It did ask them and they were allowed to it.  In its third instruction the jury were told that the burden was upon plaintiff to show that while she was in the act of alighting "but before she had reasonable opportunity to leave said car, it was suddenly started," etc.  The same proposition is put to the jury in defendant's fifth instruction given.

There is no substantial merit in the point.

(x)   The instruction is criticised from another side, viz., that it did not put it to the jury to find that "the operatives of the car actually knew she

was alighting." There might be circumstances under which that element should be injected into an instruction. If she had undertaken to get off the car at an unusual place or under unusual or confused circumstances there would be good sense in requiring the jury to find actual knowledge on the part of the conductor, but this car stopped for the *specific purpose of letting her off*. She arose and went to the exit. The conductor stood at the exit. He was bound to know she was in the act of alighting. That was what the stop was for and it was his business and duty to know. The Clotworthy Case, 80 Mo. 220, is not in point. The instruction there criticised related to a steam railway train, stopping according to schedule at a station. The facts are not fully disclosed. The court ruled that the defendant was not liable unless the conductor had *reason to suspect* that plaintiff was in the act of alighting. We think the right doctrine relating to street cars is that when the uncontradicted testimony shows the car stopped in obedience to a signal to let a passenger off and such passenger, in the immediate presence of the conductor, is proceeding to alight, then the court may assume as a matter of law that the conductor (being presumably a man of reason) *"had reason to suspect"* that plaintiff is in the act of alighting. In the absence of any unreasonable delay, as here, it is his duty to see her clear of the car.

(y) It is next argued that the instruction is erroneous because there was no evidence supporting that clause of it which put it to the jury to find that the car started with a "sudden movement." We do not read the record that way. One witness testified the cars on that line always started suddenly. This car started so suddenly and with such force as to wrench plaintiff's back—so suddenly that plaintiff could not safely alight and the passenger to get on was left standing alone in the dark. We have no call

to require a great amount of *suddenness* upon which to predicate liability in starting a car with a woman passenger poised or resting on one foot on the step and the other in the air about to reach the ground. The point is disallowed.

(z)  Instructions four and five are criticised on the ground that they allow double damages for the same pain of body or mind and the same injury, and because they allow damages for mental distress disconnected from any injury.  The point need not be developed.  Learned counsel inadvertently argue illy in that behalf.  The instructions speak for themselves and the criticisms spring, we think, somewhat from exuberance of versatility in over-refinement, calculated to please and divert, but not instruct or persuade, the judicial mind.  We find no fault with either of them.

The premises considered, the judgment is reversed as to the United Railways Company and is affirmed as to the St. Louis Transit Company.  All concur.


## ON MOTION FOR REHEARING.

PER CURIAM.—We construed appellant's brief to *abandon* the contention that the court improperly modified its instruction numbered 4.  The language of the brief seemed to be directed to submitting a theory of negligence not counted on by the petition. As we did not see how the modification had that effect we construed the point as abandoned.  Counsel say we erred in that construction, and, assuming so much, how does the *interpolation* submit a theory of negligence not pleaded?  All of the instruction but the *interpolation* was appellant's own language.  The interpolation in substance referred the jury to the other instructions (which set forth the very acts of negligence complained of) and told the jury that if ap-

pellant was not guilty of the negligence there defined and which led up to Mrs. Westervelt's injury, but if she was injured solely by reason of the condition of the ground, then she could not recover. The modification was proper; because if A does a negligent act which contributed to the injury of B, A is responsible so long as B does no negligent act contributing to his own injury. If *other things or conditions* contribute to the injury, that does not relieve A. So that the mere depression in the ground was no defense unless the Transit Company was free from negligence contributing to the injury of the woman in alighting from the car. The interpolation gave voice to that principle. The motion for a rehearing is overruled.