CHARLES B. NIBLER, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Aplant.

Springfield Court of Appeals, March 24, 1917.

1. **APPEAL AND ERROR:** Harmless Error: Modification of Requested Instruction.   Where a requested instruction modified and given, although possibly erroneous, could not have affected the verdict or amount of damages, it was not reversible error.

2. **TRIAL:** Effect of Evidence.   Where a locomotive fireman testified that his engine was near a crossing when he saw cars ahead which caused collision, estimating distance at six hundred feet, and later testified to its correct distance of four hundred feet, his former testimony will not be binding upon him, as making him contributorily negligent in not warning the engineer when the train could have been stopped within six hundred feet.

3. **MASTER AND SERVANT:** Railway Collision: Injury to Fireman: Contributory Negligence: Jury Question.   That fireman saw oil cars a half of a mile around a curve where there was a double track and had no reason to think that the cars were on his track his train having the right of way, was not such notice of danger as to prevent him from attending to regular duties which kept him from watching the road, instead of warning the engineer, so as to constitute contributory negligence *per se,* and it was a question for

the jury whether, after attending to his regular duties, his failure to warn the engineer in sufficient time to stop the train constituted contributory negligence.

4. **DAMAGES: Personal Injury: Excessive Verdict.** A verdict for $6500 held not so excessive as to require reversal where fireman's injuries from collision reduced earning capacity from $125 a month with a chance of advancement to $50 per month, although physicians were not agreed as to the extent and permanency of his injuries.

5. **MASTER AND SERVANT: Railway Collision: Question for Jury: Extent of Injury.** The question of fireman's injuries from collission and whether he was simulating symptoms was for the jury in view of the conflicting evidence.

6. **APPEAL AND ERROR: Review: Excessive Verdict: Conflicting Evidence.** Where evidence was conflicting as to extent and permanency of fireman's injury from collision, the appellate court will not disturb the verdict where not clearly excessive.

Appeal from Jasper Circuit Court—*Hon. D. E. Blair,* Judge.

AFFIRMED.

*Cyrus Crane* and *J. W. McAntire* for appellant.

*R. C. McAfee* for respondent.

FARRINGTON, J.—Plaintiff recovered a judgment for $6,500 damages against the defendant for personal injuries sustained in a wreck the circumstances and facts surrounding which are described in a case heretofore passed on by this court (Martin v. Kansas City Southern Ry. Co., 180 S. W. 1005). The plaintiff in that case was an engineer and was running an engine over the defendant's tracks at the time of the wreck, and the plaintiff in this case was his fireman. The Martin opinion states the facts in this case except such as we shall notice in the course of this opinion bearing upon the three alleged errors relied on.

To dispose of the first contention that there was error in the action of the trial court in modifying one of defendant's requested instructions it is enough

to state that the modification though possibly errone-
ous could not in any way have affected the finding
of the jury and the amount assessed as damages, and
we hold that it was harmless error upon the record
before us.

Appellant contends that even though the defend-
ant was guilty of negligence—and this is practically
conceded in this case—plaintiff's conduct was such as
to clearly make his injury the result of his own neg-
ligence and that for this reason he is not entitled to
recover.

The place of the collision of the engine on which
plaintiff was a fireman was at the point of a long
curve, around which plaintiff traveling on his engine
had been coming something like half a mile. His posi-
tion on the engine being on the left hand side, or inside
of the curve, made his position while looking out one
from which he could see the track ahead as the engine
rounded the curve. The engineer, as shown in the
Martin opinion, was on the other side where it was
impossible for him to see the track ahead for any con-
siderable distance. The plaintiff testified in a deposi-
tion taken at Springfield, Missouri, some six or seven
months after the injury, that as they were running
some twenty or twenty-five miles an hour at a point
something like half a mile from the point of collision
he looked out and saw the string of oil cars ahead. He
did this by looking across the country as the direction
his engine was traveling at that time was not toward
the place where the string of cars were standing. The
evidence shows that the defendant maintained double
tracks and that the engine on which plaintiff was fire-
man was on the right hand track or the track on the
convex side of the curve. That the station of Elmdale
was in the direction of where these oil cars were stand-
ing at which station there is one or two sidetracks. It
is apparent that at the half mile point at which plain-
tiff said he first noticed the string of cars there was
nothing whatever to indicate to him that they were on
the track he was traveling. He was on a first-class

train, entitled to the right-of-way, and no signals were given, no flagman appeared, no warning was set out to give him any notice that these oil cars had been negligently left on the track over which this first-class train had the right-of-way to travel. It appears that plaintiffs' first duty was to fire the engine and to attend to such other duties as a fireman on a locomotive is called upon to perform and at the same time to keep such a lookout for obstructions and danger ahead as he can while or after attending to his primary duties. His testimony is that after having noticed the cars a half mile ahead of him around the curve he stepped down from his seat in the cab and attended to the firing of the engine, and, this done, that he resumed his place on the cab seat, and that then, when he was about 600 feet from the oil cars, he thought for the first time seriously the oil cars were on the track he was traveling. That he looked around at the engineer who was putting on the emergency brakes and doing apparently all he could to stop the train. The plaintiff then left his seat and made for the engineer's side to jump off, while the engineer after having done all he could to stop the train ran to the fireman's side and both jumped before the crash occurred. The engineer testified that the first he realized anything was wrong ahead—because he could not see—was the excited movement of the fireman which indicated to him that something was wrong. It is shown by plaintiff's evidence that the train could have been stopped within from 300 to 400 feet. At the trial, the plaintiff stated that when he gave his deposition at Springfield, in which he said that the first time he thought seriously the oil cars were on his track he was some 600 feet from them, he had not been back to the scene of the wreck and that some six or seven months had intervened. His testimony at the trial was that the place where he first saw that the oil cars were on his track after firing the engine was something like 400 feet from the point of collision, and that since giving his deposition he had gone back to the scene of the wreck and made observations as to the places and distances.

From reading the record it appears that he identified the place where he first saw that the oil cars on his track (both in the deposition and at the trial) as being on or near a road crossing, and the evidence shows clearly that this road crossing was some 380 feet from the point of collision.

Appellant contends that because plaintiff stated in his deposition that he noticed the oil cars at a point 600 feet ahead and yet made no effort to have the train stopped nor gave any warning whatever to the engineer to stop which could have been accomplished within that distance, the plaintiff was guilty of such contributory negligence as bars his recovery.

It is a well known rule of law that monuments control distances. Plaintiff testified that he was at or near the road crossing. While in his deposition he estimated that this point was 600 feet from the point of collision, and at the trial declared it was about 400 feet, and the actual distance is agreed to be 380 feet, we must take it that the monument, or road crossing, is the evidence that must prevail. At any rate, we do not believe that under the explanation given by plaintiff—that is, that he had not been back to the scene of the wreck during the intervening months from the date of the wreck to the taking of his deposition in which he estimated the distance at some 600 feet—he is to be held to have made such a declaration as is conclusively binding upon him, and that the case does not fall within the rule announced in Steele v. Kansas City Southern Ry. Co., 265 Mo. 97, 175 S. W. 177, cited by appellant.

We hold that the mere seeing of the string of cars half a mile away around a curve where there was a double track and where plaintiff might expect cars on the other track and had no cause to expect cars on his track was not such a notice brought home to him of their actual presence on his track as to prevent him attending to his regular duties as fireman which required him to get down and shovel coal in the engine during which time he could not keep a vigilant lookout; and that it is for the jury to say whether when he finished that

task and assumed an upright position and then saw for the first time the danger ahead and saw also that the engineer was applying the air in an effort to stop —whether his failure to see and to warn in sufficient time to stop the train constituted negligence, and that it is not so conclusive that a court would declare it negligence *per se.*

It is insisted that the verdict is excessive. To make appellant's contention plain we quote from its brief: "On this proposition we must ask this court to read the record and trust to its sense of fairness. The amount of the verdict in this case is a trifle less than juries usually allow for the loss of an arm or a leg. In this case four doctors have examined the plaintiff. X-ray pictures have been taken and no objective symptom of injury has ever been found. Plaintiff's entire claim of injury rests on his statement that he has a pain at a certain point in his back near the dorsal-lumbar region. His own physicians say that if this statement is true, then they would ascribe such pain to a fracture-dislocation, but they all say that they could find no evidence of such injury other than the unsupported statement of the plaintiff."

The evidence bearing on plaintiff's injury is that he jumped on the outside or convex side of the curve where there was a fill of some six or eight feet. That after the collision plaintiff stayed around the wreck for something like forty minutes to an hour and helped put some water on the fire in the engine and then started with the engineer who was crippled in his foot and leg for a street car, assisting the engineer. That he did not feel very bad until that night when he began to get sore. He came back to his home in Springfield the next day and was sick at the stomach for several days but took some medicine given by a physician which relieved that trouble. He then started firing on a run between Springfield and Monett and made several runs. His engineer on this run testified that plaintiff could not do the work as he could do it prior to the injury, and that in fact he (the engineer) had to do a good deal of the

firing himself to help the plaintiff and finally asked plaintiff to lay off. For nearly two years after that the plaintiff says he was unable to do anything, and testified that he cannot do any work that requires lifting and cannot do any considerable amount of walking without giving out, and that he has suffered much from a hurting in his back in the dorsal-lumbar region. Some of his witnesses testified that plaintiff has lost some weight since the injury. Before the trial he had taken a position as clerk in a cigar store at twelve dollars a week and held that position at the time of the trial. Doctor Tillery, one of his physicians, testified that plaintiff came to him complaining of being sore in the dorsal-lumbar region but that he was unable to discover that there had been a fracture or a dislocation of any of the bones. He does testify, however, to one objective symptom, and that is that plaintiff's spine seemed to be all right so far as the shape was concerned until the last time he examined plaintiff when it seemed to him (the doctor) that there was some slight curvature. Doctor Tillery and Doctor French, plaintiff's physicians, both testified that in their opinion from the symptoms of pain on pressure and description by plaintiff and from their observation of him he had received a permanent injury that will disable him from doing any work such as he had been doing or work that would require lifting or hard manual labor.

The physician testifying for defendant stated that he was unable to find any objective symptoms of any trouble, and likewise a physician who was not in the employ of the defendant but who at defendant's instance the court appointed to examine plaintiff just before the trial; neither testified that plaintiff is not permanently injured, merely testifying that they were unable to find any objective symptoms indicating to them the presence of permanent injury. It appears that defendant had X-ray pictures taken of plaintiff's back and both of plaintiff's doctors testified that the pictures presented to them at the trial were pictures of a place in plaintiff's back other than where the injury had been located by them in their examinations.

Plaintiff was earning at the time of his injury $125 a month with the chance of promotion in the ordinary course of events to a position as engineer at which his pay would be higher. His time actually lost, which he says resulted solely from being disabled on account of this injury, would amount to nearly $3,000. At the time of the trial he was making about $50 a month. He was thirty-five years of age at the time of the injury, strong and hardy. The doctors are not agreed—nor are the attorneys—as to how seriously plaintiff is injured. If he is injured as he says he is and was required to lose the amount of wages that he actually lost and will lose throughout life on account of a permanent injury, the verdict is not excessive. If he is simulating injury it was for the jury to say. There is no semblance of evidence that he was not a strong, healthy man prior to the injury or that he had any other trouble that helped to aggravate and bring about the condition he swears' he is now in. As was said in the case of Westervelt v. Transit Co., 222 Mo. l. c. 334, 335, 121 S. W. 114; "But we will not meddle with that conflict in testimony. The genius of our law has wisely and quite relieved an appellate court from that burden, at least. We neither hunger nor thirst after, nor assume, power to disturb the finding of twelve men in the box sanctioned by one on the bench on a question of fact on which the testimony ran pro and con. Theirs (not ours) the duty was to sift and winnow out the true from the false, to believe or disbelieve." We are not dealing with a case where there has been a loss of a leg or an arm or an eye or some part of the body and where there has been a verdict rendered entirely out of proportion with allowances usually given for such injuries, but a case where the question of fact to be determined is whether there was an injury at all such as is sworn to. The amount of the verdict, if plaintiff's story and that of his doctors is to be believed, is not such as calls for supervision at our hands.

The judgment is affirmed, *Cox, P. J.,* and *Sturgis, J.,* concur.