JUAN T. HUFF, Appellant, v. ST. JOSEPH RAILWAY, LIGHT, HEAT AND POWER COMPANY and CITY OF ST. JOSEPH.

Division One, July 3, 1908.

1. **STREET RAILWAY: Trespasser in Street: Evidence.** Where the petition charges that defendant is a corporation organized and existing under the laws of the State as a street railway company and is a common carrier of passengers and maintains tracks in the street for that purpose, it is not an error, in the absence of an allegation that defendant had no license or authority to maintain a track in the particular street where the plaintiff, a pedestrian, in attempting to cross the tracks fell and was injured, to exclude evidence tending to show that defendant had no such license and was therefore a trespasser at that particular point.

2. ——: ——: ——: **Immaterial.** Besides, where plaintiff was not a passenger, the evidence is not material. If the street and tracks were maintained in a reasonably safe condition for

pedestrians to travel thereon, plaintiff cannot recover against either the railway company or the city for injuries received by her in attempting to cross the tracks, whether the company was a trespasser in the street or not.

3. ———: **Instruction: In Reasonably Safe Condition, etc.** An instruction for defendant in a suit for personal injuries received by a pedestrian in attempting to cross its tracks which tells the jury that the railway company "was not required to keep the space between the rails of its tracks at the point where plaintiff claims to have been injured in a safe condition, nor to keep said space filled with dirt, cinders or any other material, so that the surface between the rails would be flush with the top of the rails; it was only required to use ordinary care to keep said space between said rails in a reasonably safe condition," etc., is highly misleading and erroneous, and contradictory.

4. ———: ———: ———: **Outside of Rails.** As an abstract proposition of law an instruction which tells the jury that the defendant railway company was not required to keep in safe condition for travel that part of the street outside the rails of its track is erroneous, but where the defect which caused the pedestrian to fall was between the rails and she was between them when her foot slipped under the furthest rail and she was injured, the instruction is not error, but proper under the facts of the case.

5. ———: ———: **Testimony Against Interest.** An instruction in a personal injury case which tells the jury that all statements made by plaintiff in her testimony which were against her interest must be accepted by them as absolutely true, and that all statements made by her in her own favor should be given such weight and credence as the jury may deem them entitled to, is erroneous, for two reasons: First, it singles out plaintiff and comments on her testimony; and, second, it erroneously declares the law, in that, if plaintiff through ignorance or by mistake made a statement against her interest, the jury are bound to take it as absolutely true, whether it was in fact true or not.

6. ———: ———: ———: **Judgment Affirmed Nevertheless.** But where the evidence does not make out a prima-facie case for plaintiff and she has no case whatever, the judgment for defendants will be affirmed, notwithstanding that and other erroneous instructions were given.

7. ———: **Pedestrian: Defective Track: Prima-Facie Case.** Where plaintiff's evidence shows that the car track extended about a foot above the surface of the street on the outside of the rails,

and from three to four inches above the surface between the rails; that she was standing near the track waiting for a car; that a runaway team was about to run over her and she attempted to run across the track to get out of the horses' way; that in doing so she got on to the track in safety, but then her foot slipped under the furthest rail, and in consequence thereof she was thrown down and seriously injured, she makes out a prima-facie case against both the street railway company and the city, of negligence in maintaining the track in a defective condition, and is entitled to have her case submitted to the jury under proper instructions.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey,* Judge.

REVERSED AND REMANDED.

*Kendall B. Randolph* for appellant.

(1) It was error to exclude evidence showing that the railway company had laid its tracks in the street without any authority from the city to do so, and that they were trespassers in said street. This record shows that such evidence was peculiarly competent in view of the fact that the court by instruction 3, given for the defendant railway company, and after having excluded such evidence, told the jury that the company had a right in such street. Street railway tracks placed in a public street of a city without a franchise are a public nuisance. Sherlock v. Railroad, 142 Mo. l. c. 183, citing 23 Am. and Eng. Ency. Law, 1093. (2) Instruction 3, given on behalf of the railway company, is misleading, and is a comment on the evidence. It tells the jury in the most pointed language that the company was not required to keep its tracks in a safe condition, and was not required to keep the space between the rails filled with dirt, cinders or any other material so that the surface between the rails would be flush with the top of the rails, but that it was only required

to use ordinary care to keep said space between said rails in a reasonably safe condition, etc. It would have been enough to have told the jury that they were only required to keep the track in a reasonably safe condition. The phrase in the last line of said instruction, "reasonably safe under the circumstances," is also misleading. It was the absolute duty of the company to lay its tracks to grade. Sherlock v. Railroad, supra; Cross v. Railroad, 77 Mo. 320; Smith v. Railroad, 98 Mo. 24; Knapp, Stout & Co. v. Railroad, 126 Mo. 26. The words "reasonably safe under the circumstances" left too much to the jury. (3) Instruction 5, given for the railway company, is erroneous in this: It repeats instruction 3 with reference to the company not being required to keep its tracks in a safe or good condition; and in stating that it is immaterial how high the rails or ties of the track extended above the street on the outside of the rails—Sherlock v. Railroad, supra—or that any holes may have been in the street. This instruction tells the jury that the street car company was not liable for any condition of the street outside of the rails, even though immediately against the rails there was a hole. It should, at least, have been required by this instruction to keep the street in repair, as far as the ends of its ties extended outside of the rails. This instruction is also erroneous in this: That it tells the jury that they may take into consideration the purposes for which the street, at the place of injury, was being used at the time of the injury. Plaintiff had a right to have the street at that point in such condition of repair that it could be used for all purposes for which a street is ordinarily used. The streets of a city must be kept in a reasonably safe condition for travel either by day or by night. Blake v. St. Louis, 40 Mo. 569; Bowie v. Kansas City, 51 Mo. 454; Bassett v. St. Joseph, 53 Mo. 290; Welsh v. St. Louis, 73 Mo. 71; Russell v. Columbia, 74 Mo. 480;

Kiley v. Kansas City, 87 Mo. 103; Carrington v. St. Louis, 89 Mo. 208; Roe v. Kansas City, 100 Mo. 190; Haniford v. Kansas City, 103 Mo. 172; Franke v. St. Louis, 110 Mo. 516; Flynn v. Neosho, 114 Mo. 567. (4) Instruction 11 does not correctly state the law. It tells the jury that all statements made by plaintiff, while upon the stand, testifying, which are against her own interests, if any, must be accepted by them as absolutely true, and that all statements made by her in her own favor should be given such weight and credence as the jury deem them fairly entitled to. The rule announced in this instruction has often been applied to admissions and statements made out of court, but the parts of the testimony of the witness before the jury cannot be separated in that way. It is the duty of the jury to give the whole testimony such weight and credence as they deem it fairly entitled to. This form of instruction has been expressly condemned by the appellate courts of this State. Culbertson v. Railroad, 50 Mo. App. 562; Ephland v. Railroad, 137 Mo. 198; Zander v. Railroad, 206 Mo. 260.

*R. A. Brown, W. B. Norris* and *O. E. Shultz* for respondents.

(1) Defendants' demurrer offered at the close of plaintiff's case should have been sustained, for the reason that plaintiff wholly failed to show by any evidence that the injuries sustained by her resulted from any negligence of the defendants, or either of them. (2) The court did not commit error in excluding the evidence offered for the purpose of showing that the railway company did not have any franchise to maintain and operate its railway tracks in Alabama street. Plaintiff in her petition alleged that the company was organized and incorporated as a street railway company under the laws of Missouri; that it was a common carrier of passengers, and as such had constructed its

tracks and operated its cars over the streets of the city of St. Joseph, including Lake avenue and Alabama street. Her petition in no way suggested or intimated that the company was not lawfully operating its cars over and in Alabama street. Under the allegations of her petition the presumption followed that the defendant railway company was lawfully in Alabama street. Under such circumstances, it was wholly incompetent for plaintiff to offer evidence in any way tending to prove that said defendant was maintaining its tracks in and operating its cars over said street without a proper franchise therefor. Where a company is maintaining and operating a line of railway tracks upon a street, the presumption is that it is lawfully maintaining and operating such line of railroad. Independence v. Railroad, 86 Mo. App. 588. Aside from the reasons above stated, the testimony was wholly incompetent for any purpose. If the defendant company negligently maintained its tracks in the street, even though lawfully there, and if, on account of such negligence, plaintiff was injured, a right of recovery would follow. She would have had no greater right had the defendant company been a trespasser on Alabama street. (3) The company was not required to keep its tracks in a safe condition, nor was it required to keep the space between the rails thereof filled with dirt, cinders or other material so that the surface between the rails would be flush with the top of the rails. The law imposed upon it no such burdens. It was only required to exercise reasonable care to keep its tracks in a reasonably safe condition. The instruction imposed upon it every duty or obligation imposed by the law of this State. 3 Elliott on Railroads (2 Ed.), p. 150; McGauley v. Railroad, 179 Mo. 592. Defendants were not insurers of the safety of pedestrians; the only duty devolving upon them was to use ordinary care to keep that portion of the street where plaintiff fell

in a reasonably safe condition for travel. Kiley v. Kansas City, 87 Mo. 103; Maus v. City, 101 Mo. 613; Franke v. City, 110 Mo. 516; Carvin v. City, 151 Mo. 334; Warren v. City, 153 Mo. 593. (4) Instruction 11, given on behalf of defendants, is criticised. There were no admissions made by plaintiff against her own interest except her admission that she stumbled over the east rail of the Hyde Valley line, and that she was at that time running to escape threatened danger from a runaway team. The admission that she stumbled over the east rail of the track eliminated the question of the condition of the track and the street at every other point. No one else witnessed the accident. There was no testimony whatever as to how or where the accident occurred, other than plaintiff's. For the purposes of this case, her admissions in the respects named were absolutely binding upon her. They were not controverted by other testimony of the plaintiff or the defendants. They were made in the presence of counsel, before the court and jury in a judicial proceeding, and come within the rule laid down in State v. Brooks, 99 Mo. 142; Houston v. Railroad, 118 Mo. App. 470; Keen v. Schnedler, 92 Mo. 526.

WOODSON, J.—This suit was begun in the circuit court of Buchanan county, and was to recover the sum of $5,000 damages for personal injuries sustained by plaintiff in consequence of a fall, caused by the alleged negligence of the defendant in permitting one of the streets of the city to become and remain in an unsafe and dangerous condition, by permitting the tracks of the railway company to extend several inches above the surface of the street, which caused her to trip and fall while passing over them.

There was a trial upon the merits before the court and a jury, which resulted in a verdict and judgment for the defendants; and, after taking the proper pre-

liminary steps therefor, the plaintiff appealed the cause to this court.

The facts of the case are few and simple, and there is no controversy as to what the evidence tends to show, except upon one point, and that is as to the condition of the surface of the street between the rails of the street car track at the place of the injury on the night of its occurrence, which will receive special consideration later on.

The facts as disclosed by the record are as follows:

The defendant, St. Joseph Railway, Light, Heat & Power Company, is a street railway company, maintaining its tracks through the city of St. Joseph and operating cars thereon as a common carrier of passengers. It operates a double-track car line on Lake avenue, one of the streets of the city of St. Joseph. Lake avenue runs north and south and extends to the southern limits of the city. At the southern terminus of this street it is intersected by Alabama street, a thoroughfare extending east and west along the southern boundary line of said city. Alabama street does not cross Lake avenue, but intersects said Lake avenue and runs thence east. The Railway Company also maintains a car line along Alabama street which runs to Hyde Valley, a suburb of the city. As this car line approaches Lake avenue from the east, it curves to the right and intersects with the Lake avenue line some feet north of the intersection of Lake avenue and Alabama street. At the intersection of the two car lines a junction is maintained where passengers are transferred from the Lake avenue line to the Hyde Valley line, and vice versa. From the point of intersection of the two, Lake avenue line runs south some feet on Lake avenue and then turns to the west and runs through the country to Lake Contrary. Both Lake avenue and Alabama street were dirt roads, and

while there was some travel on the west side of Lake avenue, which was used by persons driving to and from Lake Contrary, there was very little travel on Alabama street, so that few vehicles passed over the car tracks at and near the junction. Cars on the Hyde Valley line always go around the curve on Alabama street onto Lake avenue, and head north on Lake avenue before they stop to permit passengers to enter and alight therefrom. Cars on the Lake avenue line stop just opposite and west of the Hyde Valley car. Passengers boarded and alighted from the Hyde Valley cars on the west side thereof.

The defendant Railway Company had filled in the space between the Hyde Valley line and the Lake avenue line with dirt and cinders for the accommodation of its patrons. The space between the rails of the Hyde Valley line had also been filled with dirt and cinders.

On the twenty-third day of May, 1905, the plaintiff, who resided in Hyde Valley, had attended church in the city of St. Joseph and had returned to the junction above described on a Lake avenue car from the south, and while waiting at the junction for a Hyde Valley car, and while standing in the street between the Hyde Valley line and the Lake avenue line, a team of horses coming from the south became frightened and unruly, and plaintiff, thinking herself in danger, attempted to escape to the east and in so doing attempted to pass over the tracks of the Hyde Valley line, which at that point curved from Alabama street to Lake avenue and extended practically in a northwesterly and southeasterly direction. While passing over the east rail of this track plaintiff stumbled over said rail and fell, sustaining injuries, for which she seeks to recover damages in this suit. It was claimed by plaintiff in her petition that the streets at the point of intersection above described were full of holes, and

as a consequence were unsafe for pedestrians to use, and that the street car tracks of the defendant company extended several inches above the surface of the street, rendering them dangerous to pedestrians attempting to pass over the same.

While a number of persons were present at the time plaintiff was injured, no one witnessed the accident and no one knows what caused plaintiff to fall. Immediately after she had fallen she was found lying with her head and body east of the east rail of the Hyde Valley line and her feet upon or near said rail.

She testified and gave the following version as to how the accident happened:

"Q. Tell the jury as near as you can how you met with this accident? A. Well, on returning from church we were waiting for our car, Hyde Valley car, and we were standing, seems to me like I was standing close to that post as they call it, and all at once this team run up there plunging. I thought I heard the cracking of the vehicle, and of course I reckon they all ran, at least I did. I started to run and in the first place it came into my mind I'll go this way, and I turned to go, I suppose that would be south; but when I turned I looked up and I seen the horses' feet up in the air, and it seemed to me like when they come down they would come on me. I run right across the street, started across the track, of course expecting the horses' feet to be on me every moment—I'm a little nervous, have been since I was hurt, you will have to excuse me—I have a faint recollection of getting over the first rail, and I remember of my foot going against the last rail of the track. I presume it was towards that saloon, I don't hardly know, but I think it was. I fell, of course a hard fall; that is pretty near all I can say, only I suffered death up to the last month pretty near."

On cross-examination she said:

"Q. You say you were standing near the tele-graph pole—the pole stood in the street? A. Yes, sir; near that pole.

"Q. And you saw a team coming from the south? A. Not until it was right, I just say, on me, apparently right at us.

"Q. Then you jumped—you know where the saloon stands over in the corner? A. Yes, sir.

"Q. Did you run toward that? A. I suppose I went towards that saloon.

"Q. You think you hung your foot over the east rail? A. I felt my foot go under the rail and it threw me; I don't know whether I lit on my shoulder; I reckon I did; fell all right."

Plaintiff testified that she passed over the west rail, and in passing rapidly over the east one to get out of the way of the runaway team she caught her foot under the rail which tripped and threw her heavily to the ground, thereby inflicting the injuries of which she complains.

James H. Hyde, who was sworn on behalf of plaintiff, testified that at the time and place of the injury the rails of the street car track extended above the surface of the street on outside thereof from "ten to twelve inches." "Q. How was it between the rails? A. As near as I remember between the ties were covered."

J. D. Bromfield testified that the rails were about four inches higher than the ground between them was.

Mrs. Elliott testified that the top of the east or north rail stood about three or four inches above the surface of the ground between the rails.

Plaintiff introduced other evidence tending to show what condition the track, rails and street were in at the time and place of the injury, which was substantially the same as the foregoing.

The plaintiff offered to show by E. L. McDonald,

city clerk, that defendant, the Street Railway Company, had no authority from the city of St. Joseph to lay and maintain its tracks along and upon the streets mentioned in the evidence. Defendants objected to the introduction of that evidence, for the reason that no such issue was presented by the pleadings. The court sustained the objection and plaintiff duly excepted.

At the close of plaintiff's evidence, defendants asked an instruction in the nature of a demurrer thereto, which was, by the court, refused, to which action of the court the defendant duly excepted.

Defendants then introduced evidence which tended to prove the allegations of their respective answers.

The court then instructed the jury on behalf of the plaintiff, properly submitting her case to the jury.

The court gave on behalf of the defendant St. Joseph Railway, Light, Heat and Power Company, instructions numbered 2, 3, 5, 6, 8, 9, 11, 12 and 13 against the objections of the plaintiff, which said instructions are as follows:

"2. In trying and determining this case, you should look solely to the evidence of the witnesses for the facts, and to the instructions of the court for the law to guide you in your deliberations. It is immaterial who is plaintiff and who are defendants. The instructions of the court declare the law and the only law to guide you in your deliberations, and they must be considered and obeyed by you in arriving at your verdict.

"3. You are instructed that the defendant, St. Joseph Railway, Light, Heat and Power Company, had the right to operate and maintain its tracks in Lake avenue and Alabama street at the point described in evidence, and it was not required to keep the space between the rails of its tracks at the point where the plaintiff claims to have been injured in a safe condition; nor was it required to keep said space

filled with dirt, cinders or any other material, so that the surface between the rails would be flush with the top of the rails. It was only required to use ordinary care to keep said space between said rails in a reasonably safe condition, taking into consideration the situation there at the time, and the purpose for which said track and said street were then used; and if you believe from the evidence that the defendant Railway Company exercised ordinary care to make the space between the rails of its tracks at the place where plaintiff was injured reasonably safe under the circumstances, then your verdict will be for the defendant.

"5. You are instructed that so far as this case is concerned, the defendant St. Joseph Railway, Light, Heat and Power Company, was not required to keep in safe or good condition for travel any part of the street outside of the rails of the track at the point where plaintiff claims to have been injured; and it is immaterial how high the rails or ties of the street car tracks may have extended above the street on the outside of such rails, or that any holes may have been in the street. And if you believe from the evidence that the space between the rails of the street car tracks, at the point where plaintiff claims to have been injured, was at that time filled up with dirt or cinders so that it was in a reasonably safe condition, taking into consideration the purposes for which said street at said point was then being used, your verdict will be for the defendant.

"6. If you cannot tell from the evidence whether plaintiff caught her foot upon the street car track and was thereby thrown to the ground and injured, or whether she stumbled or fell from some other cause; or, if it is just as probable that she did fall from some cause other than by catching her foot upon the street car track, then she is not entitled to recover, and your verdict will be for the defendants.

"8. The mere fact that plaintiff may have been injured at the time and place described in evidence is of itself no evidence whatever of the negligence of defendants in this case.

"9. The plaintiff in this case cannot recover upon mere speculation or possibility, but the burden of proof rests upon her to prove by a preponderance of all the evidence to your reasonable satisfaction each and every fact necessary to authorize a recovery in this case, and unless such facts have been so proven to your reasonable satisfaction by such preponderance of all the evidence, you will find your verdict for the defendants.

"11. You are instructed that all statements made by the plaintiff while upon the stand testifying which are against her own interests, if any, must be accepted by you as absolutely true, while all statements made by her in her own favor while upon the stand testifying, if any, should be given just such weight and credence as you deem them fairly entitled to under all the other facts and circumstances in evidence.

"12. If you believe from the evidence that plaintiff was not in the exercise of ordinary care on her part at the time she received the injuries complained of, and that such want of ordinary care on her part in any way contributed directly to such injuries, then she is not entitled to recover and your verdict will be for the defendants.

"13. You are the sole judges of the credibility of the witnesses and the weight you will give their testimony, and in determining the weight you will give the testimony of any witness, you should take into consideration his or her opportunity of knowing the facts about which he or she testified, the reasonableness or unreasonableness of the statements made, and the interest any such witness may have in the result of this suit, if any, together with all the other facts and circumstances in evidence, and you should give to the

testimony of each and every witness just such weight and credence as you deem it fairly entitled to under all the other facts and circumstances in evidence.''

To the giving of said instructions and each of them the plaintiff duly objected and saved her exceptions.

The court gave on behalf of the defendant city of St. Joseph instructions numbered 2, 3, 4, 5, 6, 7 and 8 against the objections of the plaintiff, which said instructions are as follows:

''2. The court instructs the jury that the defendant city is not an insurer against accidents upon its streets, nor is every defect therein a ground of liability though it may cause an injury; but the city performs its whole duty if the streets are kept reasonably safe for persons passing over them using ordinary care and prudence, and if you believe the street at the point where plaintiff claims to have received her injuries was in such a reasonably safe condition, then plaintiff cannot recover in this action against the city, and your verdict will be for the defendant city.

''3. The court instructs the jury that before they can find for plaintiff they must not only believe from the evidence that the street at the place where the plaintiff fell was out of repair, as mentioned in the petition, but they must further find that by reason thereof it was not reasonably safe for persons using the same for a street with ordinary care and prudence.

''4. If the jury believes from the evidence that plaintiff by her own negligence directly contributed in any degree to the injury sued for, you will find for the defendant city.

''5. The court instructs the jury that it is the duty of the defendant city of St. Joseph to keep its streets in a reasonably safe condition for the use of pedestrians traveling thereon, but it is not to be charged

with negligence in this case because of the defective condition of the street where the accident is said to have occurred, if you believe it was defective, unless defendant city had notice of such defect, or unless it existed for a sufficient length of time to justify the inference that the city knew of the defect, or by reasonable diligence could have acquired such knowledge in time to have repaired it before the accident. In determining what is a sufficient length of time that would be required to justify the inference of the knowledge of such defect, you are instructed that you have a right to take into consideration all the facts and circumstances attending the same.

"6. You are instructed that by the words 'ordinary care' is meant such care as a prudent person ordinarily uses under like and similar circumstances.

"7. The court instructs the jury that the city of St. Joseph is only bound to keep its streets in a reasonably safe and suitable condition for public travel. And the amount of care and diligence to be reasonable may vary with the circumstances of each case. And by reasonable care is meant that degree of care and diligence which an ordinary careful and prudent person would be expected to use under similar circumstances. If, therefore, you believe from the evidence that the point on Lake avenue where it intersects Alabama street in the city of St. Joseph, and at which point it is claimed by the plaintiff said Alabama street was out of repair, was in a reasonably safe and suitable condition for the purpose of the amount of public travel thereon, then you will find that the defendant city of St. Joseph was not negligent, and your verdict will be for the defendant city of St. Joseph."

To the giving of said instructions and each of them the plaintiff duly objected and saved her exceptions,

I. The first insistence of the appellant is that the trial court committed reversible error in excluding her offer to prove that the defendant, the Street Railway Company, had no license or authority from the city of St. Joseph to maintain its car tracks along and upon Lake avenue and Alabama street at the place of her injury. In other words, the legal effect of her offer was to show the Railway Company was a trespasser on said streets.

The petition charges that the Street Railway Company is a corporation organized and existing under the laws of the State of Missouri as a street railway company, and is a common carrier of passengers, and that it maintains tracks upon the streets mentioned for the purpose of transferring passengers to and from various points within and outside of the city. There is no allegation in the petition that said defendant was a trespasser upon said streets, or that it was occupying them without authority to do so from the city.

While no authority has been cited by counsel for either party bearing directly upon the proposition presented, yet it would seem to us in the absence of such allegation that it must be presumed that said defendant was lawfully conducting the business of a common carrier, and, as an incident thereto, was rightfully occupying the streets of the city with its car tracks for that purpose. In the absence of such an issue presented by the pleadings, we are of the opinion that the action of the court in excluding the evidence was proper.

Independent of the suggestions just made, we are unable to see the materiality of the evidence offered. She was not a passenger, and the character of the physical obstruction in the street would not be changed by proof that the company was a trespasser.

If the street was maintained in a reasonably safe condition for persons to travel upon by day and by

night, then it seems to us that both defendants have discharged their full duties to plaintiff, and no good reason has been called to our attention, if it exist, which would justify the court in holding that she should be permitted to recover, even though it be conceded the Railway Company was there without authority of law. If the defendants are liable at all for plaintiff's injuries, it is not because the railway company is a trespasser in the streets of the city, but because they have negligently failed to maintain them in a reasonably safe condition for people to travel over; at least, that was the theory of the petition.

There was no error in excluding the offer.

II. It is next contended by counsel for appellant that instruction number three given on behalf of respondent Railway Company did not correctly declare the law applicable to the case. Among other things it told the jury that the company had the right to maintain its tracks on Lake avenue and Alabama street, and to operate its cars over the same.

The objection lodged against this instruction raises the same proposition that was discussed and decided in the first paragraph of this opinion, namely, the admissibility of evidence tending to show the railway company had no authority to maintain its tracks on the streets of the city. For the reasons there expressed, we must rule this question against appellant.

But the instruction did not stop there; it went further and told the jury that said defendant was not required to keep its tracks in a reasonably safe condition and was not required to keep the space between the rails filled with dirt, cinders or any other materials so that the surface between the rails would be flush with the top of the rails, but that it was only required to use ordinary care to keep said space between the rails in a reasonably safe condition.

That part of the instruction is highly misleading and clearly erroneous. The charge of negligence as stated in the petition is the failure of the company to maintain its tracks on a level with the surface of the street, and that in consequence thereof the ties and rails extended several inches above the surface of the street, and in passing over them the plaintiff caught her foot under one of them and was thereby thrown down and injured. If the petition stated a cause of action, then the instruction is erroneous, for the reason it tells the jury that the company was not bound to keep its track on a level with the surface of the street by filling between the rails with dirt, cinders or any other material. If that is true, then we are unable to comprehend how it would be possible for respondent to keep the track flush with the surface of the street. Under that instruction it would be a physical impossibility to maintain the track and the street on the same level, yet the law requires that they be so maintained; that is, so near a level as not to materially interfere with travel, or as not to render it unsafe and dangerous to persons traveling thereon by day or by night.

Nor is that error in the instruction cured by the following sentence thereof, which told the jury that "it was only required to use ordinary care to keep said space between said rails in a reasonably safe condition," etc. How could the space between the rails be kept in a reasonably safe condition for travel if it is not to be done by filling that space with "dirt, cinders or other materials?" It is a contradiction of terms to say in one sentence of an instruction that the law did not require the respondent company to fill the space between the rails with any kind of material and state in the next that it was only required to keep said space between said rails in a reasonably safe condition. Learned counsel for respondents have not suggested to

213 Sup—33

us how that could be done without filling the space with some kind of material, and we are unable to comprehend how it could be done any other way. To say the least it must have been misleading to the jury, and was therefore erroneous.

III.    Counsel for appellant complains of instruction number five given on behalf of the Railway Company. The complaint is lodged against that part of the instruction which told the jury that it was not required to keep in safe condition for travel any part of the street outside of the rails of its track.

As an abstract proposition of law that instruction might be erroneous, and doubtless is, but when viewed in the light of and applied to the facts of this case, then we are of the opinion that it correctly states the law. The plaintiff testified that she passed in safety over the west rail, and that when she reached the east one her foot slipped underneath it, and that in consequence thereof she was thrown to the ground and injured. The record contains no other evidence which tends to show what caused her to fall, and that being true, we are unable to see what the condition of the street outside of the rails had to do with her injury. The defect which caused her to fall was between the rails, and she was between them when she stepped into that defect, and, clearly, the condition of the street outside of the rails had nothing whatever to do with her fall.

We are, therefore, of the opinion that the instruction was proper under the facts of the case.

IV.    The next assignment of error relates to the action of the court in giving instruction number eleven for defendant company. It told the jury that all statements made by the plaintiff while upon the stand testifying which were against her interest, if any, must be accepted by them as absolutely true, and that all statements made by her in her own favor should be

given such weight and credence as the jury might deem them entitled to.

Clearly, this instruction is erroneous for two reasons: first, because it singles out plaintiff and comments upon her testimony; and, second, because it erroneously declares the law. Under this instruction if the plaintiff through ignorance or mistake made a statement against her interest, the jury was bound under their oaths to take it as *absolutely true* whether it was in point of fact true or not. We know of no means by which a party litigant can be made to understand things any better while testifying upon the witness stand than he does while acting off of the witness stand; nor by which he can be prevented from making mistakes under oath the same as he does when he is not under oath.

We have many times condemned that form of instruction, and it should never be given. [Ephland v. Railroad, 137 Mo. 1. c. 198; Zander v. Railroad, 206 Mo. 1. c. 460, 461, and cases cited.]

If the plaintiff made statements against her interest while testifying (and we must presume she did so, else the instruction would not have been given) which were untrue and made through mistake, oversight or ignorance, and she should at the time have discovered her error and had attempted to correct it, the jury under that instruction would necessarily have been compelled to have disregarded her explanation and find that the statement was true, even though the mistake was ever so apparent, for the reason the instruction told them that they *must* take such statements as *absolutely* true. Such a proposition is monstrous, and it has no foundation upon which to stand either in law or morals.

While this instruction was asked by and given on behalf of the Railway Company, still it operated with equal prejudice against her and in favor of the city.

V. Counsel for respondent company concedes the error of instruction number eleven, pointed out in the previous paragraph, but contends that the judgment should be affirmed notwithstanding that error, for the reason, as he contends, that the evidence does not make out a prima-facie case for plaintiff, and for that reason its demurrer to the evidence should have been sustained by the court.

If that was true, and plaintiff had no case whatever, then, of course, she was not and could not be prejudiced by that or any other error the court might have committed during the progress of the trial. But we do not concur in the view of learned counsel, that the evidence is not sufficient to carry the case to the jury. The record discloses the facts that the rails of the car track extend about a foot above the surface of the street on the outside of the rails and from three to four inches between them; and that while plaintiff was rushing across the track to escape the runaway team of horses, her foot slipped under the east rail, and in consequence thereof she was thrown down and seriously injured. There is an abundance of evidence in the record tending to prove those facts. If true, then both the city and the company were guilty of negligence in maintaining the street and tracks in that dangerous condition. Clearly, the evidence made out a prima-facie case for her, and she was entitled to have a jury pass upon it under proper instructions.

We are, therefore, of the opinion that the judgment should be reversed and the cause remanded for a new trial. It is so ordered.

All concur, except *Valliant, P. J.,* who is absent; *Graves, J.,* in the result.