# EDWARD B. STEELE, Appellant, v. KANSAS CITY SOUTHERN RAILWAY COMPANY.

### Division Two, April 12, 1915.

1. **NEGLIGENCE: Pedestrian on Railroad Track: Stepping in Front of Train.** Where plaintiff in walking at night in a place of safety, between the two tracks of a railroad laid in a public street, to avoid the roughness of a mere bump or a surface inequality which slightly inconvenienced him, stepped between the rails of one of them, without stopping or looking or listening, and was immediately struck from behind by a moving train or car, he cannot recover for his injuries; and where he is the only witness on the point, and he swears to those facts, the case should not be submitted to the jury.

2. **ADMISSIONS: By Plaintiff in Civil Case: No Case: Correction: Credibility.** Where a plaintiff in his testimony states the facts pertaining to his injury in such a way as to utterly defeat his right to recover, he is not conclusively bound thereby, as an admission against interest, but is entitled to protect himself against forgetfulness and mistake by a subsequent correction, even to the extent of stating the fundamental facts in such a way as to make for himself a prima-facie case, and it then becomes the province of the jury to pass upon his credibility; but if he makes no correction whatever, he is concluded by his admission; and if he makes no correction aside from merely stating subsequently a state of facts diametrically contradictory of what he had previously testified without any claim of mistake or oversight or misunderstanding or explanation of the variance, he is likewise concluded, and the jury ought not to pass upon his credibility.

3. ————: ————: ————: ————: **Negligence.** When plaintiff was first on the stand he testified that he was walking in a place of safety, between two main tracks of a railroad laid in a public street, and having reached a rough obstruction, without stopping or looking or listening, he stepped between the rails of one of them and was immediately struck by a car or train, thereby utterly defeating his right to recover. After two other witnesses had testified and the court had adjourned for the day he was taken in an automobile by his attorneys to the place of the accident, and the next day, after two other witnesses had testified, again took the stand, and without claiming he had made a mistake or misunderstood the questions or had forgotten the

265Mo.7

facts, or offering any explanation for correcting nis testimony, he testified that the obstruction between the two tracks was at a cross street, that on account of it he got upon one of the tracks, walked two hundred feet thereon and after being on the track for two minutes was struck and hurt by a car from the rear. It was nighttime, and he had previously testified he had neither seen nor heard a car or engine. *Held*, that plaintiff was precluded by his admissions or testimony when he was first on the stand, and the court did not err in granting a new trial on the ground that a demurrer to the evidence should have been sustained and a peremptory instruction to find for defendant should have been given. The facts do not show mistake, misunderstanding, inadvertence or oversight in the first statement, and under the circumstances the court was not compelled to attribute credibility to the second.

4. **CREDIBILITY OF WITNESS: New Trial.** The trial court is not compelled to believe the testimony of a witness, and if his testimony is the only evidence on the main issue, it can grant a new trial on the ground that it is not worthy of belief.

5. **ADMISSION: Binding Effect.** A judicial admission, unless avoided by explanation, is always prima-facie binding and conclusive.

6. ———: **Ordinary Witness: Contradictory Testimony.** As to a mere witness, no state of facts can ordinarily arise upon any matter of contradictory evidence that will oust the jury of their privilege in a law case of resolving the truth of such contradiction. But the testimony of a plaintiff in his own case on trial may amount to a judicial admission which shows he is not entitled to recover.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

AFFIRMED.

*Kimbrell & White* and *Martin J. O'Donnell* for appellant.

(1) It was proper to submit the case to the jury on the evidence supporting the allegation that defendant's servants saw or by the exercise of ordinary care could have seen plaintiff in a position of peril in time to have avoided injury to plaintiff by stopping the train. Scullin v. Railroad, 184 Mo. 695. (2) It was

proper to submit the case to the jury on the ground that defendant negligently operated the train over and toward street crossings on a public street at a place where, to defendant's knowledge, pedestrians were constantly passing, without ringing the bell or giving other warning. R. S. 1909, sec. 3140; Lamb v. Railroad, 147 Mo. 171; Reed v. Railroad, 107 Mo. App. 238; Lueders v. Railroad, 253 Mo. 97; Beach on Cont. Neg., sec. 95; Petty v. Railroad, 88 Mo. 319; Johnson v. Railroad, 77 Mo. 546; Donahue v. Railroad, 91 Mo. 364; Groom v. Kavanaugh, 97 Mo. App. 372; Longan v. Railroad, 72 Mo. 398; Kerry v. Railroad, 105 Mo. 288; Zander v. Transit Co., 206 Mo. 466; Peterson v. Transit Co., 199 Mo. 340; Kirlen v. Railroad, 216 Mo. 160; Felver v. Railroad, 216 Mo. 212; Kame v. Railroad, 254 Mo. 190. (3) It was proper to submit the case to the jury on the evidence supporting the allegation that defendant operated a train backward through Kansas City between sunset and sunrise without having at least one large lamp, headlight or lantern conspicuously placed in front of the same facing the direction in which the engine and cars were moving. Weller v. Railroad, 120 Mo. 635; Weller v. Railroad, 164 Mo. 180. (4) It was proper to submit the case to the jury on the evidence supporting the allegation that defendant failed to keep a proper lookout for persons who might be upon or approaching the track on which the train was approaching. Sluder v. Transit Co., 189 Mo. 136; Frick v. Railroad, 75 Mo. 609.

*Cyrus Crane* and *George J. Mersereau* for respondent.

(1) Under plaintiff's testimony on cross-examination there was no case. Moore v. Railroad, 176 Mo. 544; Newton v. Railroad, 153 Mo. App. 167. This evidence was binding even though there was an attempt

to change it. Bond v. Railroad, 110 Mo. App. 136; Shanahan v. Railroad, 109 Mo. App. 233; Sepetowsky v. Railroad, 102 Mo. App. 122; Ephland v. Railroad, 57 Mo. App. 162, 71 Mo. App. 598, 137 Mo. 187; Thorp v. Railroad, 89 Mo. 657; Shirts v. Overjohn, 60 Mo. 308; State v. Brooks, 99 Mo. 143; Feary v. Railroad, 162 Mo. 160; Smith v. Railroad, 184 Fed. 387; Cogan v. Railroad, 101 Mo. App. 189; Pratt v. Conway, 148 Mo. 299; St. Louis v. Babcock, 156 Mo. 157; Fiedler v. Bambrick, 135 Mo. App. 305; Tootle v. Buckingham, 190 Mo. 195; Oglesby v. Railroad, 177 Mo. 295. (2) Under plaintiff's entire testimony he was guilty of negligence and hence the submission was erroneous. White's Supp. to Thompson on Neg., secs. 1638, 1639 and notes; Green v. Railroad, 143 Cal. 31; McAuliff v. Railroad, 83 N. Y. Supp. 200; Winter v. Railroad, 66 N. J. L. 677. (3) There was no case under humanitarian rule. Hawkins v. Railroad, 135 Mo. App. 535; Moore v. Railroad, 176 Mo. 544; Markowitz v. Railroad, 186 Mo. 359; Baring v. Railroad, 194 Mo. 541. (4) Because of his contradictory statements the court had a right to ignore plaintiff's testimony; with that excluded there was a total failure of proof. Whether excluded or not the verdict was against the weight of the evidence—against right and fairness. It was the court's duty to set it aside on that account, on the same principle that a verdict against the weight of the evidence should be set aside by any trial court. Reid v. Insurance Co., 58 Mo. 429; State v. Young, 119 Mo. 526; Lawson v. Mills, 130 Mo. 172; Reid v. Lloyd, 61 Mo. App. 649; Young v. Ruhwedel, 119 Mo. App. 244; Noble v. Kansas City, 222 Mo. 126; Haven v. Railroad, 155 Mo. 216.

FARIS, P. J.—Action for personal injuries. Plaintiff below, who is appellant here, obtained a verdict, which, upon motion of defendant, was set aside and a new trial granted by the court. From this order

granting a new trial plaintiff appeals. The ground for the granting of a new trial was that the court had erred in refusing to sustain defendant's demurrer to the evidence and in refusing to give a peremptory instruction requested by defendant that the finding of the jury should be for defendant.

The facts in the case so far as they are pertinent to the questions raised upon this appeal are about as follows:

Plaintiff was, on and about the night of October 25, 1910, employed in the water department of Kansas City as an emergency inspector. His duties as such required him to work at night. About midnight of October 25th, or shortly thereafter on the morning of October 26th, plaintiff had started to walk down Second street from Walnut street to Grand avenue, for the purpose of inspecting a hydrant somewhere near Second and Grand, which he says, had been reported on the preceding evening to be leaking. There are on said Second street a number of railroad tracks, which either belong to or are used by the defendant. It is immaterial as to the ownership, though the proof shows that these tracks are used by some three or four other railroads besides the defendant here. Among other tracks on this street there are what are called in the record the "north main track," on which track plaintiff was hurt, and the "south main track." These tracks on Second street run in an easterly-and-westerly direction. In the neighborhood, and north of the north main track, there is a spur track leading to some mercantile establishments situate along Second street; particularly one leading to the premises of Clemons & Company, who appear to be wholesale dealers in fruit and produce. The spur track leading to the Clemons premises joins the north main track by a switch somewhere near Walnut street. The injury to plaintiff occurred on Second street and between Walnut street and Grand avenue. There is another switch

connecting the north main track with another spur which leads out to other mercantile establishments in the neighborhood. These two switches, both of which connect with the north main track, are about 200 feet apart. Plaintiff was struck and injured about 100 feet west of Grand avenue, and therefore about 200 feet from Walnut street. No witness saw him hit nor did anyone see him upon the railroad track at or near where he was hit, until he was found lying between the north and south main line tracks very seriously injured. The case turns therefore wholly upon the testimony of plaintiff himself and makes it necessary for us to rely upon his statement, a large part of which, to illustrate the subjoined discussion, we are compelled to set out in this statement *in haec verba*.

Plaintiff testifying for himself in substance said, that he reached the city hall on the evening of October 25th, somewhere about five o'clock; that he was suffering from a very severe headache, and after having taken some bromo-seltzer at a neighboring drug store, went into the city hall, sat down in a chair there and slept until twelve o'clock; that he then ate supper at a neighboring restaurant and started to walk to Second and Main streets to see some person there with whom he had an engagement; that he did not find this person in at the midnight hour at which he called, and thereupon he walked east on Second street, toward the corner of Second and Grand avenue, with a view of examining the hydrant which we mention above. His testimony is important, and since the whole case turns upon it, we quote it:

"Q. Now, as you went from Second and Main to Second and Grand, what route did you go? A. I went east from Second and Main down the tracks.

"Q. Down what tracks? A. They call them the Southern there; the north track I went down.

"Q. The north track of the Southern Railway Company? A. Yes, sir.

"Q. How far did you go before something happened to you? A. Oh, I was, I suppose, a hundred feet or more from Grand avenue this way, west—more than that.

"Q. *A hundred feet or so west of Grand? A. Yes, west of Grand.*

"Q. *Now at that time Mr. Steele, what part of the track were you walking on? A. I was walking on the north track.*

"Q. What part of the north track would you say? A. What part of it?

"Q. Yes, nearer the north rail or nearer the south rail? A. Nearer the north rail.

"Q. But between the rails? A. Yes, sir.

"Q. Say when you were between Walnut and Grand any time, did you notice any switch engine anywhere? A. I did, yes.

"Q. Where was it? A. North of me on the private switch there; I suppose it's called a private switch—Clemons's.

"Q. On the Clemons's switch? A. Yes, sir.

"Q. Which way was the engine headed? A. Headed west.

"Q. The engine was headed west? A. Yes.

"Q. How were you walking, leisurely? A. Just leisurely, yes, sir.

"Q. Just walking along slowly. What was the first you knew of the approach of any car or engine or train behind you? A. Well, I don't know of any, only I heard them down on the Pacific or Chicago & Alton, whistling down there, blowing steam off.

"Q. Tell what happened to you then? A. I don't know, it just hit me in the back here (indicating).

"Q. What hit you? I suppose the car hit me.

"Q. That's what I want you to tell this jury about. They don't know about it, you know. You were walking along there and a car hit you? A. Yes, sir.

"Q.  From which direction was it coming?  A. It was coming east.

"Q.  From behind you?  A.  Yes, sir.

"Q.  And what effect did it have upon you?  A. Knocked me down and ran over my leg and I scrambled to get out of the road.

"Q.  As you fell, Mr. Steele, are you able to tell what direction you fell in, which way you fell?  A.  I fell to the north.

"Q.  You fell to the north?  A.  Yes, sir.

"Q.  Away from the track?  A.  Yes, sir.

"Q.  State whether you had known of the approach of that car before that?  A.  No.

"Q.  Did you know there was a box car coming on the track behind you?  A.  I didn't know it, no.

"Q.  Did you hear any bell rung on the engine of that train?  A.  No, sir, not a thing.

"Q.  Was your hearing good at that time?  A.  It was, yes."

The above is all that is pertinent in plaintiff's first examination in chief as to his actions, whereabouts and position when he was hit.  As to other matters they are either unimportant or not controverted. On his cross-examination his pertinent testimony as to his position when struck and as to the conditions under which he was struck, was as follows:

"Q.  What was there in the way of an obstruction between the two tracks?  A.  Cinders piled up and it looked kind of rough to me, and, of course, it was night.

"Q.  Don't you know between the tracks and between the rails of the two tracks, all along there, the ground was smooth, no cinders piled up at all?  A. No, I don't know that.

"Q.  Do you swear now to this jury there were cinders piled up between the two tracks?  A.  Well, obstructions; I don't know what it was now.

"*Q. What kind of obstructions? A. Just like a bump, like that, just stepped over on the north track.*

"*Q. You say a bump there between the two tracks? A. A little, yes.*

"*Q. Did you see it? A. Yes, or I wouldn't have went over on the north track.*

"*Q. What was it? A. I don't know what it was.*

"*Q. Where was it? A. Just where I got hurt, just stepped over on the north track.*

"*Q. You had been walking then between the tracks, had you? A. I had been walking between the tracks.*

"*Q. You had been walking between the tracks? A. Yes, sir.*

"*Q. You just stepped over on to the north track right at the point where you got hurt? A. Yes, sir.*

"*Q. And the moment you got on the track you got struck? A. Yes—not the moment.*

"*Q. Just immediately after? A. Just immediately after.*"

Later in the cross-examination of plaintiff he was asked whether when he stepped from his position between the two tracks over on to the north track whereon he was hurt, *he looked behind him to see whether the engine or train were approaching, and he replied unequivocally that he did not.*

After this examination the plaintiff, as the record discloses, was excused as a witness without any intimation by him or his counsel that he would be used further. After one other witness for plaintiff was heard, the evening adjourning hour having arrived, the court adjourned until Wednesday, May 23, 1911. On the following morning, that is, on the morning of May 24, 1911, after two other witnesses were called and had testified in behalf of plaintiff, the latter again took the stand in his own behalf, upon which the fol-

lowing testimony was given by him, omitting objections and exceptions and rulings of the court, which, since plaintiff had a verdict below, are in nowise involved:

"Q. Mr. Steele, are you able to state—I will ask you this question first: Since you were on the stand yesterday did you go to the scene of the accident on Second street between Walnut and Grand avenue? A. I did, yes, sir.

"Q. In company with myself, and Mr. Kimbrell and Mr. Curtin? A. Yes, sir.

"Q. Now, I will have you to state, Mr. Steele, approximately *the point where you got on the north track of the Kansas City Southern Railway on Second street before you were struck? A. At Walnut street.*

"Q. You say it was at Walnut street where you got on the north track? A. Yes, sir.

"Q. After the time you got on the north track now, Mr. Steele, what direction did you go? A. East.

"Q. And where did you walk with reference to the north track from that point until you were struck? A. I was in between the rails of the north track, going east.

"Q. Now, where was this obstruction with reference to Walnut street that caused you to turn onto the north track? *A. It's just right at Walnut street, at that switch, at the switch, there's where I got on the north track.*

"Q. Now, at that time, where was this switch engine? A. It was on the side switch at Clemons's.

"Q. By Clemons's? A. By Clemons's.

"Q. Did you pass by that, or meet it rather, as you were going east? A. Yes, sir.

"Q. It was coming west on the side track? A. Just starting out.

"Q. *Mr. Steele, in point of time about how long had you been on this north track walking until you*

*were struck?    A.    I was on the track a couple of min-utes, I guess, before I was struck.*

"*Q.    Two minutes or so?    A.    Yes, or maybe a little longer, about two minutes.*

"Q.    During that time you walked from where to where?    A.    I walked from Walnut street—

"Q.    To where?    A.    Right this side of Grand avenue where I was hit."

The above is all that is pertinent of plaintiff's second examination in chief, when recalled, as we have noted above.    Upon his cross-examination plaintiff testified in substance that after the adjournment on the preceding evening his attorneys had put him in an automobile and had driven with him from Independence, where the trial was had, to Kansas City, and to the place where his injury occurred; that he had not known until he reached that place the object of this trip.    In his cross-examination among other matters pertinent, the following questions were asked him and the following answers made by him:

"Q.    Please answer my question, you talked with them about the matter of walking on the north track, didn't you.    A.    Yes, sir.

"Q.    They told you that you had made a mistake in your testimony, didn't they?    A.    No, they didn't tell me that I made a mistake.

"Q. They told you that the testimony that you were struck as soon as you stepped on the north track wouldn't do, didn't they?    A.    I didn't catch that.

"Q.    It's very simple.    They told you that that wouldn't do, that testimony that you gave that you stepped on the north track and was immediately struck, didn't they?    A.    They did.

"Q.    They did tell you that?    A.    Not that it wouldn't do, no.

"Q.    Told you you couldn't recover if that was true, didn't they?    A.    No.

"Q. What did they tell you about it? A. They told me nothing. I was showing them just how I came down the track.

"Q. You had shown them and told them all that before, hadn't you? A. I was showing them again yesterday, too.

"Q. Showing them again yesterday after they finished the case last night? A. Yes, sir.

"Q. And they told you you had testified you stepped right in front of the train, didn't they? A. They did.

"Q. They did, didn't they? A. That I testified to that?

"Q. Yes, sir. A. If I testified that, I didn't mean it.

"Q. I didn't ask you what you meant, I asked you if they didn't call your attention to the fact that you had testified to that? A. Yes, sir.

"*Q. And they told you that when you did that you made a mistake, didn't they? A. Made a mistake?*

"*Q. Yes sir, they told you that, didn't they? A. No, not as I recollect.*

"Q. Not as you recollect. Well, what did they tell you when they said that you testified to the fact you had stepped right on the north track in front of the train? A. What did they tell me?

"Q. What did the attorneys say about that testimony to you? A. They didn't say nothing that I recollect of.

"Q. That you recollect of? A. No.

"Q. What did you say about it? A. What did I say?

"Q. Yes, to them? What did they say? A. What was the question now?"

The above excerpts illustrate, we think, fairly the precise nature of the contentions upon which this case must turn. We may say in passing that the

theory of defendant is that plaintiff being drunk lay down upon an elevation near the north main track and went to sleep there with his feet upon the rail and with one or both of his shoes off. There was some little testimony tending to prove these contentions.

Plaintiff upon his first examination as a witness did not testify as to having been given liquor by those who found him and took him to the hospital, and his said testimony inferentially negatives the possibility of his knowing this fact, if it occurred. But upon his second appearance upon the stand he testifies that he was given two drinks, either by the train crew or those who put him into the ambulance.

Plaintiff was badly hurt; his injuries necessitating the amputation of his right leg some six inches below the knee; he also lost a toe from the left foot. The jury assessed his damages at $20,000.

We apprehend that the above statement will serve to fairly illustrate the one single question which we have found it necessary to discuss in the below opinion, viz., that of the sufficiency of the testimony to take the case to the jury. If it should not fairly do so, other facts will be set out in connection with what we have to say.

The single question mooted in the briefs of appellant, and likewise the only question which specifically arises from a consideration of the reason which moved the learned trial court to grant a new trial, is that the evidence is not sufficient to take the case to the jury.

**Sufficiency of Evidence.**

Two angles of this view are presented to us: (a) that the testimony of plaintiff when he was first upon the witness stand having shown a state of facts which as a matter of law absolutely precluded recovery, so concludes plaintiff as to forbid recovery, and (b) that there was no sufficient showing that the train or cars of defendant caused plaintiff's hurt.

The case presented here is *sui generis* and we have found nowhere in the books by our own researches, nor has the remarkable diligence of learned counsel found for us, any case precisely similar to it. Here the plaintiff testifying in the trial of the case as a witness for himself, solemnly swears to at least one fact, if not two, which utterly precludes his recovery as a matter of law. That one fact is (not to becloud and befog the argument with the other), that he (plaintiff) walking between the north track and the south track, in a place of safety, to avoid the roughness of a mere bump, or surface inequality which slightly inconvenienced him in walking, stepped over upon the north track, without stopping, or looking, or listening, and was immediately struck by a moving car or train, knocked down and injured. Under this state of facts, if it be true, and plaintiff swearing for himself swears 'to it, he cannot recover. [Moore v. Railroad, 176 Mo. 528; Hawkins v. Railroad, 135 Mo. App. 524; Van Bach v. Railroad, 171 Mo. 338.]

<span style="float:left">Admitting Self Out of Court: Correction.</span>

It is urged with much of ability and vehemence by learned counsel that the rule is that a plaintiff testifying for himself in his own sole suit, is not so far concluded by his sworn testimony as to take from the jury the lawful right to weigh his conflicting statements and reconcile them and pass upon his credibility as they do that of other witnesses in the case. We concede that ordinarily a party is not absolutely concluded by his testimony in a case where subsequently upon some excuse of mistake, oversight, misunderstanding, or lack of definite recollection he denies the statements forming the admissions. But so long as the admissions made by the party-witness stand they are conclusive and the adversary side may absolutely rely upon them. This prima-facie conclusiveness is destroyed when the litigant corrects his mistake upon some honest and reasonable explanation (Huff v. Railroad, 213 Mo. 495;

Downs v. Racine-Sattley Co., 175 Mo. App. l. c. 387), and makes his statements to agree with the truth of the matter. [2 Chamberlayne's Modern Law of Evidence, 1286.] So well recognized is this rule, that an instruction in substance that the jury is bound to accept as true whatever the party-witness may have said against himself but that they are not bound to believe those things which he said for himself, but may believe them or not according as they may find them corroborated by other facts and circumstances proven in the case, is now regarded (though long held to be warranted,—cf. Feary v. Railroad, 162 Mo. 75) as fatally erroneous in a civil case. [Zander v. Transit Co., 206 Mo. l. c. 461; Conner v. Railroad, 181 Mo. 397; Montgomery v. Railroad, 181 Mo. 477; Sheperd v. Transit Co., 189 Mo. 362; Stetzler v. Railroad, 210 Mo. l. c. 713; Norris v. Railroad, 239 Mo. 695.]

In a very careful and correct resume of the present condition of the Missouri ruling upon this question Judge Johnson of the Kansas City Court of Appeals, in the late case of Downs v. Racine-Sattley Co., 175 Mo. App. l. c. 386, said:

"Counsel for defendant invoke the rule 'that a plaintiff in a civil case is conclusively bound by every declaration and admission against his interest made while testifying before the court and jury' and point to the following cases as instances of the judicial recognition and application of that rule: State v. Brooks, 99 Mo. l. c. 142; Feary v. Railroad, 162 Mo. 75; State ex rel. v. Lichtman-Goodman & Co., 131 Mo. App. 65; Shirts v. Overjohn, 60 Mo. l. c. 308; Wright v. Town of Butler, 64 Mo. 165.

"In the Feary case the question of the legal effect of statements made by a plaintiff in his testimony against his interest came before the court in an instruction which told the jury that 'all statements made by him, if any, which are against his own interest must be taken as true, but his statements in his own favor are

only to be given such credit as the jury under all the facts and circumstances in evidence deem them entitled to.' The court approved that instruction saying: 'Statements against interest are called admissions in civil cases and confessions in criminal ones. They are taken as true for the purposes of the case, because no man would make them if they were not true. If confessions are enough to hang a man or to send him to the penitentiary under the criminal statutes, it is hard to see why admissions should not be enough to conclude him in a civil suit.'

"But in more recent cases, of which that of Huff v. Railway, 213 Mo. 495, may be selected for review, such instruction is condemned on the grounds that it not only singles out the plaintiff and comments on his testimony but that it erroneously declares the law. The court rejects the idea that a party testifying as a witness should be conclusively bound by the statements he may make against his interest and announces the better and more just rule that if a party through ignorance, oversight or mistake makes statements against his interest which are not true, the jury are not bound to give conclusive effect to such statements.

"To the same effect are Meyers v. Railroad, 171 Mo. App. 283; Lehner v. Railroad, 110 Mo. App. 215; Zander v. Transit Co., 206 Mo. l. c. 461; Conner v. Railroad, 181 Mo. 397; Ephland v. Railroad, 137 Mo. l. c. 198; Quinn v. Railroad, 218 Mo. l. c. 556; Norris v. Railroad, 239 Mo. l. c. 719."

Conceding the law to be thus and finding therewith no fault, an obviously different condition of facts is presented by this record. Plaintiff, as shown by the cases we cite, supra, had, as the vernacular expresses it, "sworn himself out of court" beyond any manner of doubt. He was finally excused from the witness stand thereafter without any request or even a suggestion that he would be called again as a witness in the case. After court adjourned on the evening of May 23rd,

he was, without his request and without any explanation, or prior knowledge on his part, put into an automobile and taken by his attorneys from Independence, Missouri, to Second street and Grand avenue in Kansas City, and there by his attorneys shown the *locus in quo*. On the next morning, after two other witnesses had testified, the plaintiff was again called to the stand as a witness and then without averring oversight, inadvertence, misunderstanding, mistake, or defective memory, diametrically changed and altered his testimony so that a prima-facie case was made out for the jury, where before there was none. In short, on May 23rd, plaintiff swore *that without stopping, looking or listening, he stepped upon the north track some* 200 *feet from Walnut street and was thereafter immediately struck and injured*. On May 24th, after finally being excused therefrom, he again took the stand and swore that *he got on the north track at Walnut street, walked east thereon for two hundred feet and after being on this track for two minutes was struck and hurt*. We have set out in our statement what he said and all apposite he said in his re-examination in chief after he took the stand the second time. It is true that in an answer made to a question in his cross-examination, not responsive to the question asked him, he did say, "If I testified that I didn't mean it;" but he nowhere says why he did not mean it, or why he came to say it if he did not mean it; nor does he anywhere claim any excuse of misunderstanding, inadvertence, oversight or mistake which would in law relieve him from the force of his solemn admissions theretofore made. But on the contrary to show unmistakably that he knew and fully appreciated exactly what he was saying, the below colloquy occurred in his cross-examination when he was first on the witness stand, viz.:

"Q. What was there in the way of an obstruction between the two tracks? A. Cinders piled up and it looked kind of rough to me, and, of course, it was night.

"Q. Don't you know between the tracks and between the rails of the two tracks, all along there, the ground was smooth, no cinders piled up at all? A. No, I don't know that.

"Q. Do you swear now to this jury there were cinders piled up between the two tracks? A. Well, obstructions; I don't know what it was now.

"Q. What kind of obstructions? A. Just like a bump, like that, just stepped over on the north track.

"Q. You say a bump there between the two tracks? A. A little, yes.

"Q. Did you see it? A. Yes, or I wouldn't have went over on the north track.

"Q. What was it? A. I don't know what it was.

"Q. Where was it? A. Just where I got hurt, just stepped over on the north track."

Notwithstanding this, when he took the stand the second time he stated unequivocally that the obstruction that caused him to step upon the north main line track *was the cross-over switch at Walnut street.*

When a party litigant takes the stand as a witness for himself he ought to be permitted and he is permitted to protect himself from the human frailties of forgetfulness and mistake precisely as is any other witness. He ought not to be, and he is not, bound down by any cast-iron rule so that he is forever concluded by the least lapse of memory or oversight or mistake which may lead him by inadvertence to a misstatement of fact, which may, as a matter of law, destroy his case utterly. He may correct his errors and mistakes and lapses of memory and leave the jury on the whole case to pass upon his credibility. If he make no correction whatever as we have seen, he is absolutely con-

cluded and his adversary may with confidence rely upon the admissions made. as conclusive against the maker thereof. If he make no correction aside from merely stating to-day a state of facts diametrically contrary to, and contradictory of, what he said in the same case on yesterday, ought the jury to pass upon his credibility, in the absence of any claim of mistake or oversight or lapse of memory or misunderstanding, or ought the court to say to him as a matter of law that absent a reasonable excuse, or explanation of the variance, except that inferably deducible from a desire to obtain a verdict, what you said to-day, since it contradicts what you said on yesterday, also cancels it, and you have, at the best that may be said, no proof upon a point vital to your case? We are not bound even as an appellate court to believe a mere witness in a case when it appears from conclusive physical facts, or is otherwise patent, that such witness is either perjured or clearly mistaken. Why then are we compelled to believe a litigant swearing for himself under the same circumstances? *A fortiori,* the court *nisi,* whose alleged errors in this behalf we are now considering, is not compelled to believe him in such case. Even upon the latter view alone then, the granting of a new trial by the court *nisi* was warranted.

We have nowhere among the many cases cited to us, or among the hundreds which we have examined, found one turning upon facts like these before us here. As stated before, upon its peculiar facts, which we labor to make clear, it seems to be *sui generis.*

Pursuing the argument further upon matters analogous, we find it held almost, if not quite, universally, that the judicial admissions of an attorney are absolutely conclusive upon his client, until made matters for the determination of the triers of

**Admissions.**

fact by subsequent averment and proof of misunderstanding, or mistake or other sufficient cause. [O'Keefe v. Railroad, 124 Mo. App. l. c. 621;

Pratt v. Conway, 148 Mo. 1. c. 299; St. Louis v Babcock, 156 Mo. 154; Tootle v. Buckingham, 190 Mo. 1. c. 195.] While conceding the difference between a deliberate procedural judicial admission made in all formal solemnity for the express purpose of being binding, as compared to the sort of admission under consideration, yet can it be successfully contended that a fact absolutely precluding recovery can be spoken into the record by the admissions of counsel, or written therein by a solemn pleading made by such counsel, and which utterly concludes the client unless and until some legally excusing explanation is given for a diametrically contrary statement, but that the litigant cannot with his own mouth, under the formal solemnity of his oath, so bind himself? Can it be that an attorney has more power to conclude and bind his client than the client has to conclude and bind himself? We think the question answers itself, to the extent, at least, that some reason for avoiding the admissions of the party-witness must be shown before these admissions cease to be conclusive. And the reason urged must in logic and common sense be something more satisfying than the mere existing fact of absolute contradiction.

Neither an attorney nor his client, the litigant, ought to be allowed to play fast-and-loose with courts. If the trial of a lawsuit is for the purpose of ascertaining the truth and applying the law to that truth, so that the judgment which the law gives upon a certain state of facts may be rendered in the cause, it would be lamentable indeed if a brazen lack of candor should in the minds of fair and just men stamp the alleged truth found as being rankly suspicious. Courts are, in theory at least, forums established for the discovery and determination of the ultimate facts; so they ought not to be used as hotbeds for the germination and promotion of perjury. No litigant in his own sole case ought to be heard

by a court, without some explanation or excuse, to deny to-day what he solemnly swore was true on yesterday. This excuse (surely as to diametrically contradictory testimony given in the same trial of the same case) ought to be sufficient as a matter of logic and of law to raise a debatable question in the minds of reasonable and disinterested men. When such explanation of mistake or oversight or ignorance or misunderstanding or inadvertence or illness affecting memory, comes in, clearly the rule is, as we have seen, that the party-witness is not concluded and the jury may resolve the truth of the case.

In the late case of Huff v. Railroad, 213 Mo. l. c. 515 (a case which had no carrying vote here, but the rule in which we approve), it was said, apposite to the facts here:

"If the plaintiff made statements against her interest while testifying (and we must presume she did so, else the instruction would not have been given) which were untrue and *made through mistake, oversight or ignorance,* and she should at the time have discovered her error and had attempted to correct it, the jury under that instruction would necessarily have been compelled to have disregarded her explanation and find that the statement was true, even though the mistake was ever so apparent, for the reason the instruction told them that they must take such statements as absolutely true. Such a proposition is monstrous, and it has no foundation upon which to stand either in law or morals." [Italics ours.]

But when no explanation or excuse for the variance is given, as in the instant case, the matter of the probative effect of such bald contradictions ought to be left to the court to be passed on as a matter of law. What in such case is there for a jury to pass on? Why should the self-serving statements of to-day, favoring interest, have more probative weight than the admissions of yesterday against interest? If there be

a reason in the whole realm of law or logic making for any such distinction it is inscrutable; especially in a case where, as here, there is no testimony whatever as to the time when and the place where plaintiff stepped upon the north track save and except that of the plaintiff himself. Suppose the action had been upon a promissory note, and on May 23, 1911, plaintiff suing as payee, had solemnly testified that the note had been paid to him in full; but on the next day had gone upon the stand *apropos* of nothing, and vouchsafing no excuse for his previous testimony, had said the note had not been paid; the inference in such case would be either insanity or perjury; the former of which destroys the competency, and the latter the credibility of a witness. [Secs. 2022 and 6362, R. S. 1909.] The case presented is not one of a mere verbal discrepancy arising, it might be, from the manner of speech of the witness, but a vital and fatal variance made so far as the last above quoted excerpt and the whole context shows, deliberately.

Let it be borne in mind also that we are not dealing with the testimony of a witness in the case merely, but with that which is more than the utterances of a mere witness, viz., with a judicial admission, which always and until avoided by explanation, is, prima-facie binding and conclusive. [Morrison v. Riker, 26 Mich. 385; Coit v. Waples, 1 Minn. 134; Raridan v. Railroad, 69 Iowa, 527; Goldwater v. Burnside, 22 Wash. 215; Weider v. Clark, 27 Ill. 251.] We need not reiterate that as to a mere witness no state of facts could ordinarily arise upon any matter of contradictory evidence, that would oust the triers of fact of their privilege in a lawsuit of resolving the truth of such contradiction.

Neither the cases to which our attention has been called, nor any which our own somewhat diligent search has unearthed, throw very much light on this case; owing to its peculiar facts. All of these cases

deal either with minor and non-vital admissions, or are cases having to do with admissions in former trials, or in other suits.    The case of Pelton v. Schmidt, 104 Mich. 1. c. 347, illustrates both the phase of non-vital admission and that of the conclusiveness *vel non* of testimony in a former trial.    In that case at the page supra, it was said:

"Upon the first trial there was no evidence tending to show any express or implied invitation to enter the store from the rear.    The plaintiff testified that he had never been in the store from that way before the occasion of his injury, and it appeared from other testimony that it was the intention of the defendants to have the goods inspected and receipted for at the back door, when delivered.    Defendants' counsel contend that the plaintiff is concluded by his former testimony, and that he should not be allowed to recover by reason of evidence flatly contradictory of his former testimony.    Decisions of this court in cases brought here by writ of error are conclusive upon the parties, so far as the law is concerned, whenever the same state of facts is presented; but upon different facts other principles may apply.    If parties change their testimony, the jury may properly consider the fact; but it is not for this court to say that a party must stand or fall by his former testimony, where there is any legitimate opportunity for a change in the testimony.    It may, perhaps, be said that there was no such opportunity here, but by ordering a new trial this court relegated the subject to the jury."

In the case of Chilton v. Scruggs, 5 Lea, 1. c. 318, a party litigant was denied recovery and held to be estopped by his sworn statements in a former suit, where such party in the last suit had not shown or attempted to show that his former contradictory statements "were made inconsiderately, or without full knowledge of the facts."

But we need not pursue this matter further; we conclude that under the facts here the learned trial court was fully warranted in granting defendant a new trial.

We are likewise in grave doubt whether there was upon the other mooted phase of the case, viz., as to the identity or ownership of the train or cars which struck and hurt plaintiff, any sufficient proof. But as the case must be retried we will not embarrass it by either a discussion or a decision of it at this time.

Let the case be affirmed and remanded for the new trial granted by the court *nisi*. All concur.